Commonwealth *v.* Hollenbaugh, Appellant.

Argued May 23, 1972.   Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*N. A. Patterson,* with him *Keith B. Qugley,* for appellant.

*Clyde R. Bomgardner,* District Attorney, with him *Gerald K. Morrison,* Assistant District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Pomeroy, October 4, 1972:

On December 27, 1968, the appellant, Charles E. Hollenbaugh, pleaded guilty to two separate indictments for murder, one pertaining to the killing of Richard Larry Bitting, the other to the killing of Linda Fisher.   A panel of three judges subsequently determined that both crimes were murder in the first degree, and appellant was sentenced to life imprisonment in each case, the sentences to run concurrently.   This appeal comes to us under the Appellate Court Jurisdic-

tion Act of 1970, July 31, 1970, P. L. 673, art. II, §202 (1), 17 P.S. §211.202(1).[1]  We affirm.

In the early morning hours of March 23, 1968, appellant walked into the State Police Substation at Duncannon, Pennsylvania and announced to the officer on desk duty, "I give myself up.  I just killed two people." That assertion was soon verified by the discovery of the bodies of Linda Fisher and Richard Bitting in a station wagon parked behind a nearby lounge.  During the course of the morning at the police station, appellant was warned of his constitutional rights on several occasions, twice in writing; he nevertheless gave a written statement of the events surrounding the crimes.  He further informed police that the murder weapon was an 8mm. rifle lying on the back seat of his car, then parked outside the station.  Accompanied by appellant's father and brother, a police officer retrieved the weapon and unexploded ammunition.

Appellant's statement and the evidence introduced at the degree-of-guilt hearing disclosed the following:

On the evening of Friday, the 22nd of March, 1968, Charles Hollenbaugh and his then girl friend, Linda Motter, were making the rounds of several night spots in the Borough of Duncannon.  At Barney's Cafe, Hollenbaugh encountered Linda Fisher in the company of Richard Bitting, a man the appellant had a short time previously threatened with death should he persist in his attentions toward Linda Fisher.  It appears that

---

[1] No post-trial motions were filed by trial counsel. Appellate counsel sought leave to do so *nunc pro tunc*, but this application came after this appeal had been filed. It was, therefore, properly denied. As we have recently pointed out, the better practice when convictions of first degree murder follow a plea of guilty to murder generally is to file post-trial motions if an appeal is contemplated. *Commonwealth v. Robinson*, 442 Pa. 512, 515 n. 2, 276 A. 2d 537 (1971).

the appellant Hollenbaugh was at that precise moment midway between girl friends: he had been carrying on an illicit relationship with Linda Fisher and had heard through rumor that she was with child, and he had only recently entered into a similar relationship with Linda Motter, his companion of the evening. After Barney's Cafe closed for the evening, Hollenbaugh and Linda Motter drove to her parents' home and there passed the hours before daylight in his parked car. After taking leave of Miss Motter, appellant drove back to Barney's to ascertain if his other paramour, Linda Fisher, was displaying the fidelity of which he himself was apparently incapable. She was not.

Hollenbaugh, enraged by this betrayal, drove to his home, obtained his rifle and ammunition, returned to the parking lot at the rear of Barney's, and there discharged the weapon six times into the car in which Richard Bitting and Linda Fisher were still sitting. The medical evidence revealed that both died instantly.

Appellant argues here that (1) the prosecution was in possession of illegally obtained evidence (the confession, the rifle, and the ammunition), (2) that the guilty pleas were motivated by fear of this evidence, and (3) that the pleas were entered on ineffective advice of counsel. In *Commonwealth v. Marsh,* 440 Pa. 590, 271 A. 2d 481 (1970), this Court held that to succeed on his chosen line of attack, appellant must demonstrate the existence of all the above three factors. See also *Commonwealth v. Ward,* 442 Pa. 351, 275 A. 2d 92 (1971); *Commonwealth v. Moroz,* 444 Pa. 493, 281 A. 2d 842 (1971).

Our analysis as a matter of course begins with the guilty plea, appellant's understanding of its nature and the competence of counsel in advising it. *Commonwealth v. Ward,* supra. As appellant's pleas were entered after our decision in *Commonwealth ex rel. West*

10

*v. Rundle,* 428 Pa. 102, 237 A. 2d 196 (1968), the record must and does contain a searching examination of appellant's understanding of the nature of a guilty plea. That colloquy, set out in full in the margin,[2] took

---

[2] THE COURT: Mr. Hollenbaugh, will you come forward, please.

Mr. Hollenbaugh, your counsel, Mr. Irwin, has made a motion before the Court to permit you to change your pleas in these cases. You had entered pleas of not guilty at the time of arraignment. Subsequently, we came here to accept a change to pleas of guilty in this court room, however at that time you reaffirmed your pleas of not guilty.

With your counsel's motion, if we grant it, you would then enter a plea of guilty to these charges. If you enter pleas of guilty to these charges, you would be admitting that you took the lives of these two named persons and that you took their lives with the intent to kill.

The crime to which you would be entering a plea would be murder generally, and this would be murder in the second degree, and in order for the Court to find that it was murder in the first degree, the Commonwealth would have to produce evidence to support murder in the first degree.

You would, in fact, be admitting murder in the second degree, however, if the Commonwealth produced evidence of first degree murder, that is, killing with the intent to kill, with premeditation, time to plan and forming the design, then, of course, the Court could impose sentence of either life imprisonment or, in fact, if it is warranted in the judgment of the Court, death.

However, if at this hearing, if you do enter a plea of guilty, at this hearing today, the Court finds that the evidence may constitute murder in the first degree, the Court will recess this hearing today and request the Supreme Court to assign two other judges of like jurisdiction, or law [sic] judges; the two judges who are here now are lay judges, or associate judges, as you know.

We would sit and decide the issues of law and fact and the Court would make a decision as to whether the case did constitute murder in the first degree.

Have you discussed with your attorney, Mr. Hollenbaugh, what these sentences may be?

THE DEFENDANT: Yes, sir.

MR. IRWIN: I have discussed this with the defendant on several occasions, and also, in the hearing subsequent to his plea that the

place in two stages, one at the time of entry of the pleas and one at the conclusion of the degree-of-guilt hearing. We are of the opinion that both of these sets

Court may find, if the evidence has sufficient mitigating testimony, that the Court may find voluntary manslaughter.

THE COURT: Yes, that is right.

What prompted you, then, to want to change your plea Mr. Hollenbaugh?

THE DEFENDANT: Your, Honor, I have discussed it over with my counsel again, and also with my parents, and it is my decision, with counseling with my parents and my counsel, to change my plea.

THE COURT: Do you realize by changing your plea you would be admitting that you did take the lives of these two people?

THE DEFENDANT: Yes.

THE COURT: All right.

We will permit you to change your plea.

MR. IRWIN: Your Honor, the indictment has been properly endorsed with pleas of guilty.

THE COURT: Very well.

Do you have any reservations at all about the properness, the correctness of this? Do you have any reservations that this might not be the right thing for you to do?

THE DEFENDANT: No, Your Honor.

THE COURT: Very well.

. . .

THE COURT: Mr. Hollenbaugh, come forward, please.

Mr. Hollenbaugh, you have entered pleas of guilty to two charges of murder. We have heard the evidence in the case, and there are a couple of questions we want to ask you before we hear the arguments of counsel.

Do you understand before you entered your pleas of guilty that you were presumed to be innocent until the crimes were proved in these cases beyond a reasonable doubt?

THE DEFENDANT: Yes, sir, Your Honor, I understand that.

THE COURT: And did you understand if you were convicted of murder in the first degree the sentence that could be imposed would be either death or life imprisonment?

THE DEFENDANT: Yes, Your Honor, I understand that.

THE COURT: Was there any arrangement made with you when you entered your pleas of guilty with regard to what the sentence

of inquiries show that the appellant was well aware of the nature and consequences of his plea.

——————

might be? Did you have any discussions with the District Attorney or did your attorney have any discussions with the District Attorney? Did you discuss what the sentence might be if you entered a plea of guilty?

THE DEFENDANT: Yes, sir, but—

THE COURT: What did you understand the sentence might be if a plea was entered?

THE DEFENDANT: To first degree?

THE COURT: What penalty would the Court impose?

THE DEFENDANT: What penalty would the Court impose? Life sentence.

THE COURT: Do you understand, Mr. Hollenbaugh, that if there was such an understanding between you and your attorney and the District Attorney, that the Court would not have to follow that, and the Court is free to impose whatever sentence it thought was proper?

THE DEFENDANT: I understand that very much, sir.

THE COURT: Do you understand what act it is said you performed? That is, do you understand what acts it is said that you did that were alleged to be the crime in this case?

THE DEFENDANT: I shot two people.

THE COURT: Do you understand that is the basis of these charges?

THE DEFENDANT: Yes, sir.

THE COURT: Did you understand when you entered your guilty pleas that you admitted those facts?

THE DEFENDANT: Yes, sir.

MR. IRWIN: Your Honor, there are several other things I would like to put in the record: That I have fully advised my client of his right to appeal from any sentence or action of the Court in this case; that if he couldn't afford counsel for appeal, if he desired, counsel would be appointed to represent him on appeal, if that is necessary, and if he so desires.

THE COURT: Do you understand all that, Mr. Hollenbaugh?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you been satisfied throughout these proceedings with the ability and effectiveness of your attorney, the way Mr. Irwin has represented you?

THE DEFENDANT: Very much so.

THE COURT: All right, you may be seated, Mr. Hollenbaugh.

Prior to trial appellant's attorney filed a motion to suppress the confession and the rifle and ammunition in the hands of the prosecutor on the ground that the confession was obtained in violation of appellant's rights against self-incrimination under *Miranda v. Arizona*, 384 U.S. 426, 16 L. Ed. 2d 694 (1966), and that the evidence was seized from appellant's car without a warrant and not incident to an arrest. At the hearing on the motion, it appeared that appellant had been repeatedly warned of his *Miranda* rights, both orally and in writing, and that after informing the police of the location of the murder weapon, appellant had affirmatively indicated that he consented to a search of his car. The suppression court denied the motion. Subsequently, appellant's counsel recommended to his client that a guilty plea was the best course of action.

In the face of evidence as damning as that in the case at bar, it cannot be said to be unreasonable for counsel to advise his client to plead guilty. Appellant's attorney had done what he could to suppress the confession and the gun; the court's resolution of the factual issues against appellant—that he had been warned and that he had consented to the search—was not clearly erroneous. In light of the prospective use of this evidence at trial, counsel's recommendation to plead guilty rather than stand trial was surely a reasonable choice among the available alternatives. While there was, to be sure, a risk that the court would find first degree murder at the degree of guilt hearing, it appeared certain that if the defendant went to trial before a jury, a conviction of voluntary manslaughter would be the least possible verdict; acquittal was out of the question, and the death penalty was a distinct possibility. Since voluntary manslaughter could also be sought before the court in a degree of guilt hearing following a plea of guilty to murder generally, it was sound strategy to attempt to eliminate the risk of a

death penalty while at the same time preserving the possibility of obtaining a conviction of the least serious offense.[3]   We have no hesitance in concluding that appellant was not deprived of the effective assistance of counsel.   *Commonwealth v. Ward, supra; Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A. 2d 349 (1967).   The guilty pleas therefore must stand.

The judgments of sentence are affirmed.

------

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I join the majority but wish to express my view on an issue mentioned but not discussed by the majority. A review of the colloquy between the trial court and appellant indicates that appellant's plea of guilty to murder generally rested to a "significant degree" on a plea bargain in which the district attorney promised to recommend a sentence of life imprisonment.   See *Santobello v. New York,* 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971).   Notwithstanding this plea bargain neither the district attorney nor defense counsel informed the trial court of the agreement, and both counsel stood mute during the degree of guilt hearing.   If this was so, the failure by both the district attorney and defense counsel to inform the court of the existence of the plea bargain was in clear violation of their respective professional obligations.[1]

The controlling decisional law and authorities[2] are clear that once a district attorney enters into a plea

------

[3] There is some intimation in the latter portion of the colloquy quoted in footnote 2 that a plea bargain may have been struck with the District Attorney.   We note that while present at the sentencing hearing, the District Attorney remained silent and made no recommendation to the court as to what the sentence should be.

[1] ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty §1.5 (Approved Draft 1968) ; ABA Project on Standards for Criminal Justice, Standards Relat-

bargain he has the professional responsibility to perform his part of the bargain. See e.g., *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495 (1971); *Commonwealth v. Alvarado*, 442 Pa. 516, 276 A. 2d 526 (1971); see also *United States ex rel. Culbreath v. Rundle*, F. 2d (3d Cir. 1972). Here, however, appellant did in fact receive a sentence of life imprisonment despite the failure of either the district attorney or defense counsel to inform the court of the plea bargain. My concurrence in no way condones the district attorney's or defense counsel's failure to satisfy their professional responsibilities by informing the court of the existence of the plea bargain.

Mr. Justice NIX joins in this opinion.

---

ing to The Function of the Trial Judge §4.1(b) (Tentative Draft 1972).

[2] The ABA Standards for The Prosecution Function observe: "(c) If the prosecutor finds he is unable to fulfill an understanding previously agreed upon in plea discussions, he should give notice promptly to the defendant and cooperate in securing leave of the court for the defendant to withdraw any plea and take other steps appropriate to restore the defendant to the position he was in before the understanding was reached or plea made." ABA Project on Standards for Criminal Justice, Standards Relating to The Prosecution Function and the Defense Function, The Prosecution Function §4.3 (Approved Draft 1971); see also ABA Project on Standards for Criminal Justice, Standards Relating to The Function of the Trial Judge §4.1(c)(iii) (Tentative Draft 1972); ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty §§1.5 and 2.1(a)(ii)(4) (Approved Draft 1968); Pa. R. Crim. P. 319(a).