## Commonwealth *v.* Turman, Appellant.

Submitted June 18, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*William C. Haynes,* for appellant.

*Michael H. Ranck,* Assistant District Attorney, and *D. Richard Eckman,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., September 23, 1974:

This appeal arises from appellant's pleas of guilty to four counts of robbery based upon purse-snatchings in the Lancaster vicinity in April of 1973. Appellant now argues that the pleas were invalid since the record of the colloquy below fails to indicate, inter alia, that appellant understood the nature and the elements of the offenses with which he stood charged. In support of this argument appellant cites our Supreme Court's most recent decision in *Commonwealth v. Ingram*, 455 Pa. 198 (1974).[1]

*Commonwealth v. Ingram* involved a guilty plea colloquy conducted on the record by the trial court which the appellant therein alleged to be insufficient (1) to establish a factual basis for the plea, (2) to establish that the appellant understood the charges against him, and (3) to inform the appellant of his right to be presumed innocent. Our Supreme Court had little difficulty in disposing of the third point in noting that our courts have never *required* that an instruction on the presumption of innocence be given.

---

[1] It is important to note at the outset that the principal question is not whether the guilty plea entered was in fact voluntary and understanding. If that were the only question, we would have no difficulty affirming the lower court's judgment of sentence without lengthy discussion. Rather, as will be seen below, the question is whether the trial court conducted an inquiry calculated to aid that court in some modest way in reaching the proper answer to the ultimate question of the voluntariness and intelligence of the plea. In point of fact, a particular defendant may be truly ignorant of his rights despite the fact that the colloquy complied in all respects with the requirements of *Ingram*. On the other hand another defendant may be fully aware of his rights although such knowledge is not apparent from the face of the record. Hardly ever will the former be able to convince a hearing court that his plea was truly involuntary or unintelligent, while the latter will be permitted to plead anew without any necessity for a determination that he in fact pleaded guilty voluntarily and intelligently.

The Court also found that the colloquy and testimony amply demonstrated a factual basis for the plea. The Supreme Court then turned to the appellant's remaining allegation of error—the trial court's failure to explain to appellant the nature and elements of the crime charged. The Court stated that the trial court explained the crime to the appellant in only the most general terms, not sufficient to demonstrate "that the elements of the crime or crimes charged were outlined in understandable terms." *Id.* at 204. Therefore, if such instructions were necessary, the guilty plea would have been invalid and the appellant would have been entitled to a new trial. After examining two recent cases on that question, which will be fully discussed below, the Court concluded: "Our decisions in Commonwealth v. Campbell [451 Pa. 465 (1973)], and Commonwealth v. Jackson, 450 Pa. 417, 299 A. 2d 209 (1973), both of which dealt with extensive colloquys *on this point, imply* that such examination is mandatory. We now expressly hold that there is such a requirement." *Id.*

Thus, there can be no doubt that in order for a guilty plea to be valid if tenderd after *Ingram,* the record must demonstrate, inter alia, that the crime or crimes charged were explained to the accused in understandable terms and that a factual basis for the plea existed. The question before our court today, however, is whether the requirement that the record indicate the accused's understanding of the nature and elements of the crimes charged applies to guilty plea colloquys which occurred prior to the *Ingram* decision.[2] More specifically, the question is whether *Ingram* should be applied retroactively or, if not, whether

[2] The trial in the *instant* case occurred in June, 1973, after the *Jackson* and *Campbell* cases were decided, but prior to the *Ingram* decision.

*Commonwealth v. Campbell,* supra, or *Commonwealth v. Jackson,* supra, previously established the requirement that the record demonstrate the accused's understanding of the nature and elements of the crime with which he is charged.

The question of retroactive application of *Ingram* need not long detain us. Because the *"Ingram Rule"* is one of prophylaxis only,[3] it would be senseless to apply it to colloquys which occurred prior to the decision of the *Ingram* case.[4] Indeed, generally speaking, rules governing the procedure to be employed prior to the acceptance of guilty pleas should only be prospectively applied. *Commonwealth v. McKee,* 226 Pa. Superior Ct. 196, 202-03 (1973).

Having determined that *Ingram* should not be retroactively applied, we now turn to the question of whether the *Jackson* and *Campbell* cases, cited in *Ingram,* established the requirement that the colloquy must demonstrate that the defendant was apprised of the nature and elements of the crime or crimes charged prior to entering his guilty plea.

In *Commonwealth v. Jackson,* the Court did not confront a situation where there was not a colloquy explaining the elements of the crime. Rather, that decision concerned whether a guilty plea was valid when a statement that the defendant had made to the police indicated that the homicide with which he was

---

[3] See note 1, supra. See also *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102 (1968).

[4] As the United States Supreme Court stated in *Stovall v. Denno,* 388 U.S. 293, 297 (1967): "The criteria guiding resolution of the question [of retroactivity] implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." See also *Linkletter v. Walker,* 381 U.S. 618 (1965).

charged was either accidental or in self defense. The trial court, prior to accepting the proffered plea of guilty, wisely sought to determine that the defendant understood that he was admitting that the killing was willful and intentional, and not in self-defense. In affirming the lower court's acceptance of the defendant's guilty plea following that colloquy, the Supreme Court did not suggest that an explanation of the elements of the crime, and the defenses thereto, was required in every case prior to the acceptance of a guilty plea. *Jackson* suggests, at most, that when the evidence indicates that a defense to the crime may exist, the trial court is well-advised to ascertain from the defendant that he knows he is admitting that no such defense exists in fact.

Similarly, *Commonwealth v. Campbell* did not deal with an ordinary guilty plea situation. The issue in that case was whether the trial court's explanation to the defendant of the mental state required for voluntary manslaughter erroneously misled the defendant, thereby vitiating the intelligence of his guilty plea. Once again in affirming the lower court's acceptance of the guilty plea, the Supreme Court did not suggest that the court was required, in every case, to instruct the defendant on the elements and defenses to the crime or crimes charged. That was not the question before the Court. The Supreme Court only suggested that if the trial court undertakes to so instruct the defendant it must not, through an erroneous statement of the law, aid in the inducement of an unintelligent guilty plea.

Thus, neither the *Jackson* nor the *Campbell* case can be construed as establishing the prophylactic rule that the trial court conduct an on-the-record colloquy with the defendant to ascertain that he is aware of the nature and elements of the crime with which he is charged. This conclusion is fortified by an examina-

tion of Rule 319(a) and the Comment thereto as it existed both before and after the Court's decisions in *Jackson* and *Campbell*.[5] While Rule 319(a) itself remained unaltered, the Comment was revised to include the following:

"It is *recommended*, however, that at a minimum the judge ask questions to elicit the following information:

(1) Does the defendant understand the nature of the charges to which he is pleading guilty?

---

[5] Pa. R. Crim. P. Rule 319(a) (1973) provided:

"Rule 319. Pleas and Plea Agreements

(a) Generally. A defendant may plead not guilty, guilty, or with the consent of the court, nolo contendere. The judge may refuse to accept a plea of guilty, and shall not accept it unless he determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered. Such inquiry shall appear on the record.

Comment to Paragraph (a): The purpose of paragraph (a) is to codify the requirement that the judge, on the record, ascertain from the defendant that the guilty plea is voluntarily and understandingly tendered. Recent court decisions have indicated that this is the preferred practice but have not made the requirement mandatory. See Commonwealth ex rel. West v. Rundle, 428 Pa. 102, 237 A. 2d 196 (1968); Commonwealth v. Belgrave, 445 Pa. 311, 285 A. 2d 448 (1971).

It is difficult to formulate a comprehensive list of questions a judge must ask of a defendant in determining whether the judge should accept the plea of guilty. Court decisions constantly add areas to be encompassed in determining whether the defendant understands the full impact and consequences of his plea, but is nevertheless willing to enter that plea. . . . Many, though not all, of the areas to be covered by such questions are set forth in a footnote to the Court's opinion in Commonwealth v. Martin, 445 Pa. 49, 54-56, 282 A. 2d 241 (1971), in which the colloquy conducted by the trial judge is cited with approval.

It is advisable that the judge should conduct the examination of the defendant. However, paragraph (a) does not prevent defense counsel or the attorney for the Commonwealth from conducting part or all of the examination of the defendant, as permitted by the judge."

(2)  Is there a factual basis for the plea?

(3)  Does the defendant understand that he has the right to trial by jury?

(4)  Does the defendant understand that he is presumed innocent until he is found guilty?

(5)  Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6)  Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

". . . As to the requirement that the judge ascertain that there is a factual basis for the plea, see Commonwealth v. Maddox, 450 Pa. 406, 300 A. 2d 503 (1973), and Commonwealth v. Bernard Jackson, 450 Pa. 417, 299 A. 2d 209 (1973)." (Emphasis added.)

Although the Comment states that an inquiry into the factual basis for the guilty plea is *required* in all cases, citing the *Jackson* case as authority for that proposition, it leaves the other five areas of inquiry as merely recommendations—some checkpoints for satisfaction of the underlying and important question of whether "the plea is voluntarily and understandingly tendered." Pa. R. Crim. P. 319(a). Had *Jackson* and *Campbell* established the requirement that the colloquy indicate in every case that the defendant understood the nature and elements of the crime charged, the Supreme Court in drafting the Comment certainly would have so indicated as it did with the "factual basis" problem.[6] Furthermore, as *Ingram* makes clear,

_____

[6] Indeed, it is scarcely likely that the Court would continue to recommend reference to *Commonwealth v. Martin*, 445 Pa. 49 (1971), even as a starting point, if such an inquiry were required in every case since the colloquy in *Martin* did not treat that point at all. Yet, even after *Commonwealth v. Campbell* and *Commonwealth v. Jackson*, the comment retained its recommendation of *Commonwealth v. Martin* as a useful starting point.

the *recommended* areas of inquiry which appear in the Comment need not be plumbed by the trial court in every case, for *Ingram* states the Court has never *required* that the colloquy treat the presumption of innocence despite the fact that the Comment recommends doing so.

Finally, we add that it is rare to find a situation where the trial court explained the elements of the offense to the accused, because the trial court most often reasonably concludes, after hearing the evidence establishing the "factual basis" for the plea, that both the defendant's attorney and the court itself, by reason of their legal education and experience, are better able to determine whether the facts admitted constitute the crime charged or raise a viable defense. Indeed if a defendant were to withdraw his plea after hearing a simplified statement of the elements of the crime, despite the fact that both the court and his counsel are convinced that the facts clearly establish his guilt, his action would more likely be the result of a misconception of the law rather than an informed judgment of the strength of the Commonwealth's case. The American Bar Association's notable project on *Standards Relating to Guilty Pleas* does not even hint at such a requirement. Instead, Standard 1.6 provides only that the court should ascertain that there is a factual basis for the plea.

This is not to say that no purpose is served by explaining the elements of the crime to the defendant. At the least such an explanation, along with the other inquiries required, has the salutary effect conveying to the defendant the court's concern for his rights.[7] It

---

[7] In *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102 (1968), the case which led to the requirement of on-the-record colloquys prior to acceptance of guilty pleas, the Court only conceived that the procedure would insulate the pleas from attack and ease the task of the trial courts. To apply the rule in *Ingram* to cases

is certainly true that if the defendant is impressed that the court strived to do justice in his case, his disrespect for the law and its institutions will be partially mollified. The question is, however, whether this admirable purpose may be effected by an implication read into the *Campbell* and *Jackson* cases, or will be served by its retroactive application under the *Ingram* case, when so doing would undoubtedly render invalid the majority of the guilty pleas tendered in Pennsylvania during the twelve month period between the *Jackson* decision and the *Ingram* case. Furthermore, that every such defendant would seek to have his guilty plea reviewed is virtually a foregone conclusion insofar as the sentence rendered following the guilty plea will establish the maximum punishment he may receive at his new trial, unless subsequent, identifiable conduct warrants an increase in his sentence. *North Carolina v. Pearce,* 395 U.S. 711 (1969); *Commonwealth v. Wright,* 444 Pa. 588 (1971). The criminal justice system, already overwrought, cannot afford to invest so much time and energy to reap so small a profit.

Hence, we now hold that in those cases arising prior to *Ingram,* assuming a factual basis appears on the record, the record as a whole need only demonstrate that the "plea was voluntarily and understandingly tendered." Of course, to insure that the record is sufficient in that respect, the trial court should inquire into those areas indicated in the Comment to Rule 319(a).

Since the inquiry of record in the instant case sufficiently indicates that the guilty plea was voluntarily and understandingly tendered,[8] the judgment of sentence of the lower court is affirmed.

arising prior to that decision would be counter-productive of that goal.

[8] Among other things, the lengthy colloquy in the instant case explicitly demonstrated: (1) that there was an adequate factual

SPAETH, J., concurs in the result.

basis for the plea; (2) that the plea was a product of the appellant's free will; (3) that the appellant understood his right to a trial by jury; (4) that the appellant knew the allowable punishment for the offense; (5) that the appellant had discussed his case on several occasions with his counsel who informed him of his rights and possible sentences; and (6) that the appellant admitted perpetrating the acts that constituted the crime.