372 A.2d 785
**COMMONWEALTH of Pennsylvania**
**v.**
**Yuba LOPEZ, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 18, 1975.

Decided April 28, 1977.

Walter J. Collins, Jr., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Glenn S. Gitomer, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant Yuba Lopez was convicted in a jury trial of murder in the second degree.[1] After post-trial motions were filed and denied, he was sentenced to eight to twenty years imprisonment; no appeal was taken from that judgment of sentence. On April 11, 1974, Lopez filed a petition under the Post-Conviction Hearing Act[2] alleging, *inter alia*, that he had not effectively waived his right to an appeal. After a hearing the PCHA court entered an order on October 29, 1974, granting Lopez leave to file an appeal nunc pro tunc for that reason but otherwise denying relief. This direct appeal followed from that judgment of sentence.[3]

At trial the following evidence, summarized by the trial judge in his opinion in support of the denial of post motions, was undisputed.

"The instant shooting occurred at approximately 9:15 P.M. on May 24, 1971, at the corner of Fairhill and York Streets in Philadelphia. The Commonwealth, relying on the testimony of one Arthur Danby, the driver of the car from which the fatal shot was fired, police officers and the statement of the defendant, was able to show that on the night in question, the defendant got into a car driven by Arthur Danby. The defendant carried with him a sixteen gauge single-barreled shotgun. Several blocks later, a friend of the defendant, a boy called 'Mackey' entered the auto.

---

1. The prosecution of Lopez was under the Penal Code, Act of June 24, 1939, P.L. 872, 4701, as amended, 18 Pa.C.S.A. § 4701, as amended, 18 Pa.C.S.A. § 4701, repealed by the passage of the new Crimes Code, 18 Pa.C.S. 1 *et seq.*, effective June 6, 1973.

2. Act of January 25, 1966, P.L. (1965) 1580, § 1, 19 P.S. § 1180–1 *et seq.*

3. This Court has jurisdiction under the Act of July 31, 1970, P.L. 673, No. 223, art. II, § 201, 17 P.S. § 211.102 (Supp.1976–77).

The defendant and Mackey sat in the back seat. Danby did the driving, the defendant sat on the driver's side, directly behind Danby.

"As the automobile approached the intersection of Fairhill and York Streets, a group of boys, allegedly members of the Zulu Nation gang, were standing on the corner."

A shot was fired from the rear seat of the car and

"Charles Johnson, a young man who had been standing near the corner fell, fatally wounded by the single shotgun blast. The defendant then ordered Danby to 'go ahead' and keep driving. Several blocks later, both the defendant and Mackey got out of Danby's auto and took off in separate directions, with the defendant clutching the murder weapon."

The principal factual issue at trial was whether appellant or Mackey had fired the fatal shot. In the absence of any eyewitness who could testify on this point, the Commonwealth relied in its case in chief on statements given by Lopez after his arrest. On appeal, Lopez argues that these statements were inadmissible for several reasons: (1) the statements were obtained in violation of Pa.R.C.P. 130 [4] which directs that a suspect shall be arraigned without "unnecessary delay," (2) the statements were the product of a warrantless arrest which was illegal because not based on probable cause and (3) the statements were involuntary. Because of our disposition on the issue of involuntariness, we need not reach the other two issues.[5]

---

4. Formerly Rule 118. See *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) and its progeny.

5. Although the issue of the sufficiency of the evidence to sustain his conviction was raised by appellant in his post-trial motions, that issue has not been presented to us by the appellant on this appeal. Furthermore, because appellant did not raise the *Futch* issue during trial, it is waived. *Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 48 (1975).

The facts surrounding the giving of these statements, as found by the suppression court, are as follows:

At approximately 6:00 a. m. on May 24, 1971, Yuba Lopez was arrested at his home and taken to police headquarters for questioning concerning the circumstances of Charles Johnson's death. At 6:45 a. m. he was given the required *Miranda* warnings [6] by Detective Raymond Dougherty of the Philadelphia Homicide Division, who then interviewed him until 7:10 a. m. During this period Lopez denied any participation in the shooting of Johnson. Lopez was then given coffee and a sandwich and left alone until 7:35 a. m. when Officer Dougherty asked him whether he wanted to go to the bathroom. From 7:39 to 8:15 a. m. another brief interview took place. The record then shows only that Lopez was left alone in an interview room furnished only with a table and some chairs from 8:15 a. m. until 9:10 p. m. Another police officer, Officer Thornton, then again advised Lopez of his constitutional rights, which were waived, and proceeded to question him until 10:00 p. m. During this interview Lopez admitted that he had been in the vehicle driven by Danby at the time the fatal shot was fired, but insisted that he had been in the front seat and that Mackey, who had been in the back seat, had fired the shot. From 10:00 p. m. until 4:05 a. m. the next day, while the police investigated the whereabouts of Mackey, appellant was again left alone in an interrogation room.[7] At 4:05 a. m. Lopez gave a second statement.[8] The exact

6. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

7. At the suppression hearing, Officer Thornton testified that he "didn't believe" that appellant had been handcuffed to a chair during this period.

8. This statement and the preceding one were taken down and typed by Officer Thornton. No written version of either statement was ever shown to or signed by the appellant.

contents of that statement were disputed at trial. Officer Thornton testified that the statement was as follows:

On the morning of May 24, 1971, Yuba Lopez had been working as a bartender. With a group of customers, he had left the bar to see what was causing some noise outside; he was shot and lightly wounded by some persons who he assumed were members of the Zulu gang. Later that day he had purchased a rifle from someone who visited the bar. When he entered the car driven by Arthur Danby, whom he knew as "Snooty," he took the gun into the car with him. Lopez's statement continued as follows:

"I put the gun in the back of the car.

Snooty was driving and we pulled off and we went down Leithgow Street to York Street.

We ran into a guy named Mackey. I don't know his real name.

Mackey got in the car with us and he got in the back seat with me.

He asked me what was going on and I told him. I got shot today. And we were going to go spotting a Zulu and scare them. Mackey stated arguing . . . and said if you are not going to shoot, let me shoot.

We rode around and we got down to Fairhill and York Street.

We saw some of them and Mackey said there they go, shoot.

And I said I just wanted to scare them.

I stuck the gun out the window and me and Mackey were pulling for the gun and the gun went off because it was cocked."

\* \* \* \* \* \* \* \*

Q. Why did you go looking for members of the Zulu gang with a gun?

A.   I was going to give them a fair one but I had the gun in case there were too many of them.

At trial Lopez testified that he had been physically abused by two police officers.   Furthermore, although he took the stand and repeated as true parts of this second statement, he denied that he had made at least two of the incriminating statements quoted above.   First, he claimed that he had never said he went looking for some Zulus with the gun to scare them; rather he claimed to have stated only that he "wanted to go up and get a fair one, we call it, a fair one.   That is, fighting with your fist."   Second, he claimed that Mackey had put the gun out of the window, and that the shooting had been accidental.

"He asked me, tell me, tell him to shoot and I said no, don't shoot.

And I grabbed him, I grabbed him by the barrel of the gun and he still made it and shot the gun . . . ."

■   Relying on *Commonwealth v. Saunders*, 459 Pa. 677, 331 A.2d 193 (1975), the trial judge concluded that admission of these statements was at most harmless error because Lopez had adopted his pre-trial statements on the stand.   *Saunders*, however, is inapposite;   in that case the defendant gave on the witness stand "almost verbatim the same version of the episode as that contained in the statement which was introduced into evidence," 459 Pa. at 681, 331 A.2d at 194.   Here the appellant's trial testimony disputed the accuracy of several crucial portions of his earlier statement.

■■   To be voluntary and hence admissible in evidence a confession must be found to be the product of the defendant's free will, considering all the circumstances. *Commonwealth v. Smith*, 470 Pa. 219, 368 A.2d 272 (1976) ;   *Commonwealth v. Biebighauser*, 450 Pa. 336, 300 A.2d 70 (1973).   The Commonwealth has the burden

of showing by a preponderance of the credible testimony that a confession was voluntarily made, *Commonwealth v. Jones,* 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Moore,* 454 Pa. 337, 311 A.2d 620 (1973). Although the trial court found as a fact that the appellant's statements were voluntarily made, this finding is not supported by the record. Our independent scrutiny of the transcript of the suppression hearing leaves us with the conviction that the Commonwealth has failed to meet its burden in this case.

■ The appellant made his first statement approximately fifteen hours after his arrival at the police station; his second statement was made about seven hours later. The record shows evidence of only one meal fed to the appellant throughout this entire period. According to the testimony of the police officers themselves, Lopez was allowed to rest only in an interrogation room which was not equipped with a bed or cot.[9] Furthermore, the length of time between appellant's arrest and his second, more incriminatory statement—twenty-two hours—is itself a factor in the determination as to voluntariness. *Commonwealth v. Smith, supra; Commonwealth v. Riggins,* 451 Pa. 519, 304 A.2d 473 (1973). While this is not a case in which the defendant was subjected to prolonged and continuous interrogation, see *Riggins, supra,* and *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968), neither is it a case where the evidence clearly shows that the defendant, having been given adequate food and opportunities to rest, confessed in a relatively short time, see *Commonwealth v. Alston,* 456 Pa. 128, 317 A.2d 241 (1971). No explanation is offered by the Commonwealth for the protracted period during which Lopez was held incommunicado, without adequate

9. The trial court found as a fact that Lopez "had adequate rest, was not tired or sleepy, was allowed numerous opportunities to rest. . . ." How this finding was arrived at cannot be gleaned from the record; the only evidence in the suppression record was summarized *ante* at 786.

opportunity for rest or food, except that for the last several hours the police were searching for Mackey. This was not a sufficient reason. The totality of the circumstances as revealed by this record impels us to hold that the statements made by this appellant to the police resulted from an essentially coercive atmosphere and should have been suppressed as involuntary. Cf. *Commonwealth v. Simms*, 455 Pa. 599, 317 A.2d 265 (1974); *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651, 654 (1973).

Judgment of sentence reversed and new trial granted.

JONES, former C. J., did not participate in the consideration or decision of this case.

NIX, J., concurs in the result.