427 A.2d 623

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John Paul MINARIK, Appellee.**

Supreme Court of Pennsylvania.

Submitted Oct. 3, 1980.

Decided March 13, 1981.

Reargument Denied April 17, 1981.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Pittsburgh, for appellant.

Paul Bogdon, Pittsburgh, for appellee.

Before O'BRIEN, C. J., ROBERTS, NIX, LARSEN, FLAHERTY, and KAUFFMAN, JJ.

## OPINION

LARSEN, Justice:

At approximately 3:30 a. m. on February 7, 1971, appellee John Paul Minarik climbed through the window of the second-story bedroom where his former fiancee lay sleeping and, before the eyes of her mother who stood helplessly by, killed her with an ax. Appellee was arrested later that day and was subsequently indicted by a grand jury and charged with murder and voluntary manslaughter. On October 4, 1971, appellee pleaded guilty to murder generally. After a hearing on degree of guilt, the court determined that appellee was guilty of murder of the first degree and sentenced him to life imprisonment.

Almost six years after appellee pled guilty, on May 31, 1977, he petitioned the Court of Common Pleas of Allegheny County to withdraw his guilty plea. In his petition, appellee alleged 1) that his guilty plea failed to meet procedural requirements which this Court first established in 1974,[1] 2) that his guilty plea failed to comport with constitutionally required procedures announced by the United States Su-

---

1. See *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974).

preme Court in 1976,[2] and 3) that he was incompetent to plead guilty. On April 30, 1980, three years after the filing of appellee's petition and eight and one-half years after the entry of his guilty plea, the Court of Common Pleas, relying solely upon the first ground alleged, entered an order granting the petition and allowing appellee to withdraw his guilty plea and proceed to a new trial.[3] This direct appeal by the Commonwealth followed.

The 12-page guilty plea colloquy between the trial judge and appellee reveals that at the time he pleaded guilty, appellee was 23 years old, had a bachelor's degree in engineering, had begun working toward a master's degree, and was employed as an engineering trainee. During the course of the colloquy the judge informed appellee, *inter alia*, that he had been charged with murder and voluntary manslaughter; that the purpose of the colloquy was to determine whether he understood the meaning of the charges; that he had been charged with unlawfully and feloniously causing the death of another; that by pleading guilty he was admitting that he was guilty of murder of the second degree; that the Commonwealth had the burden of proving that the murder was wilful, deliberate and premeditated in order to raise the crime to murder of the first degree; and that he had the burden of introducing evidence to lower the degree of the crime to voluntary manslaughter. In response to the judge's questioning, appellee admitted having killed the victim; indicated that he understood everything the judge had told him; stated that he had had adequate opportunity to meet with his counsel and that he was pleased with the representation that counsel provided; and acknowledged that his guilty plea was the product of his own free will. At the conclusion of the colloquy, when the judge asked appellee whether he wished to say anything further, appellee

2. *See Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

3. The Court of Common Pleas thus found it unnecessary to consider the merits of the second and third grounds for relief alleged in the petition.

responded simply: "My plea was entered voluntarily by myself. I understand."

The first issue we must resolve is whether it was proper to permit appellee to withdraw his guilty plea solely because that plea did not comply with procedures that were instituted more than two years after that plea was entered.[4]

In 1974, in an opinion dealing with Rule 319(a), Pa.R. Crim.P.,[5] this Court held for the first time that, in order to ensure that a defendant understands the nature of the charges against him, "the record [of a guilty plea] must disclose that the elements of the crime or crimes charged were outlined in understandable terms." *Commonwealth v. Ingram*, 455 Pa. 198, 203–4, 316 A.2d 77, 80 (1974). In 1976, however, the way was paved for what is, in effect, the retroactive application of the holding in *Ingram* to cases like the instant case, when this Court further held that

> the defendant's understanding of the nature and elements of the charges against him has long been an essential part of a valid guilty plea in Pennsylvania. In this respect *Ingram* cannot be said to be new law.

*Commonwealth v. Minor*, 467 Pa. 230, 235, 356 A.2d 346, 348 (1976) (footnote omitted).[6]

---

4. Since we decide this issue in favor of the Commonwealth, we have no need to address the remaining issue raised by the Commonwealth, namely, the propriety of permitting an evidentiary hearing to supplement the guilty plea colloquy in order to determine if the accused was informed of the legal elements of the crime charged.

5. In 1974, Rule 319(a), Pa.R.Crim.P. provided:
   Generally. A defendant may plead not guilty, guilty, or with the consent of the court, nolo contendere. The judge may refuse to accept a plea of guilty, and shall not accept it unless he determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered. Such inquiry shall appear on the record.

6. Since the decision in *Minor*, this Court has required the withdrawal of several otherwise valid pre-*Ingram* guilty pleas solely on the grounds that those pleas failed to meet the standards set forth in *Ingram*. *See, e. g., Commonwealth v. Zakrzewski*, 485 Pa. 532, 403 A.2d 516 (1979) (guilty plea entered on June 13, 1973 and permitted by this Court to be withdrawn as of July 5, 1979); *Commonwealth v. Veltre*, 475 Pa. 285, 380 A.2d 356 (1977) (guilty plea entered on

The guilty plea in this case was valid under the law in effect when it was entered in 1971; although the court did not inform appellee of the specific legal elements of the crime charged, the on-the-record colloquy shows that the plea was made voluntarily, knowingly and intelligently, and with a full understanding of the nature of the charges. *Commonwealth v. Belgrave*, 445 Pa. 311, 317, 285 A.2d 448, 450 (1971).[7] However, the guilty plea colloquy between the trial judge and appellee concededly falls below the standards set forth in *Ingram* ; although appellee had a general understanding of the nature of the charges against him, nowhere during the proceeding was he provided with an outline of the legal elements of the various degrees of criminal homicide in understandable terms.[8] In this case we are asked by the Commonwealth to reexamine this Court's holding in *Minor*, which compelled the court below to allow appellee to withdraw his otherwise valid guilty plea.

The Commonwealth relies upon three factors—Rule 319(a), the practice in the courts before *Ingram*, and decisions of the Superior Court after *Ingram*—to support its assertion that *Ingram* did, in fact, create a new rule of criminal procedure.[9] This position has considerable merit.

Prior to the decision in *Ingram*, the comments to Rule 319(a) merely recommended that the judge ask questions to

September 17, 1973 and permitted by this Court to be withdrawn as of December 1, 1977).

7. For examples of guilty pleas which were accepted after colloquies similar to the one in the instant case and which we sustained on appeal, *see Commonwealth v. Hollenbaugh*, 449 Pa. 6, 295 A.2d 78 (1972); *Commonwealth v. Martin*, 445 Pa. 49, 282 A.2d 241 (1971).

8. This is not to suggest that pre-*Ingram* guilty pleas were inherently unfair. Although judging a single guilty plea under both pre-*Ingram* and post-*Ingram* standards may produce contradictory results, the only distinction between these standards is one of form and not one of fairness: pre-*Ingram*, as well as post-*Ingram*, guilty plea colloquies satisfy the mandates of due process. *See Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Commonwealth v. Jenkins*, 449 Pa. 398, 296 A.2d 926 (1972).

9. This Court possesses the power to prescribe general rules governing procedure in the courts. Pa.Const. art. 5, § 10(c).

ascertain whether the defendant had an understanding of the nature of the charges to which he was pleading guilty. *Commonwealth v. Ingram,* 455 Pa. at 204 n.5, 316 A.2d at 81 n.5. Those comments never suggested, much less required, that the record of a guilty plea must contain an outline of the specific legal elements of the crime charged. As a consequence, courts accepting guilty pleas sought to ensure simply that the defendant had a general understanding of the nature of his offense, and this Court affirmed the validity of such guilty pleas on appeal.[10] It was not until the decision in *Ingram* that trial courts were required to outline, on the record, the legal elements of the offense charged, or that failure to comply with this requirement constituted grounds for the withdrawal of a guilty plea. *See, e. g., Commonwealth v. Tabb,* 477 Pa. 115, 383 A.2d 849 (1978); *Commonwealth v. Kulp,* 476 Pa. 358, 382 A.2d 1209 (1978). In view of the magnitude of the changes brought about by *Ingram*—the establishment of new procedures for the ac-

---

**10.** *See* cases cited note 7 *supra.* With respect to the nature of the crime to which he was pleading guilty, in *Commonwealth v. Hollenbaugh,* the defendant was told:

> [Y]ou would be admitting that you took the lives of these two named persons . . . with the intent to kill. The crime to which you would be entering a plea would be murder generally, and this would be murder in the second degree . . . .
>
> \*　\*　\*　\*　\*　\*
>
> [I]f the Commonwealth produced evidence of first degree murder, that is, killing with the intent to kill, with premeditation, time to plan and forming the design, . . . the Court could impose sentence . . . .
>
> \*　\*　\*　\*　\*　\*
>
> [I]f the evidence has sufficient mitigating testimony, . . . the Court may find voluntary manslaughter.

449 Pa. at 10–11 n.2, 295 A.2d at 80–81 n.2. In *Commonwealth v. Martin,* the court informed the defendant:

> [B]efore you enter any plea of guilty to murder generally . . .: As you stand here, you are aware that you are charged as an accomplice . . . in [a] murder . . .?
>
> \*　\*　\*　\*　\*
>
> [Y]ou could let the Commonwealth certify . . . the degree of the crime does not exceed second-degree murder . . . . I, the Court, then have the duty of determining whether you are guilty of murder of the first degree, murder of the second degree, or voluntary manslaughter.

445 Pa. at 54–55 n.2, 282 A.2d at 244 n.2.

ceptance of guilty pleas and the creation of new grounds for the withdrawal of guilty pleas—we can only conclude that the holding of *Ingram* constituted a new rule of criminal procedure—in effect, an amendment to Rule 319(a).[11]

Having determined that *Ingram* did create a new rule of criminal procedure, we must determine whether it controls in this case. Court-made rules of procedure do not generally apply retroactively: when the circumstance motivating a new rule "is not one of constitutional proportions, a rule will be wholly prospective . . . ." *Commonwealth v. Milliken*, 450 Pa. 310, 315, 300 A.2d 78, 81 (1973). Although *Ingram* did establish a new rule of criminal procedure, its holding was not constitutionally mandated. The opinion in *Ingram* failed to mention a single constitutional principle or cite a single case in which the United States Supreme Court established specific procedures to ensure a defendant's understanding of the nature of the charges against him. It was not until the subsequent decision in *Minor* that this Court first attempted to explain *Ingram* on constitutional grounds, and that after-the-fact explanation was less than compelling; the case relied upon by the majority, *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), simply held, without imposing any particular procedural requirements, that due process requires the record of a guilty plea to disclose that the defendant is entering his plea voluntarily and understandingly, and that is precisely what this Court's cases prior to *Ingram* required. *See, e. g., Commonwealth v. Mears*, 454 Pa. 222, 311 A.2d 615 (1973); *Commonwealth v. Roundtree*, 440 Pa. 199, 269 A.2d 709 (1970).

11. This conclusion is supported by opinions of the Superior Court rendered before this Court's decision in *Minor*, which stated that "prior case law did not expressly require such a colloquy," and that "*Ingram* should only apply to guilty plea colloquies conducted after January 24, 1974, the date of the *Ingram* decision." *Commonwealth v. Hanna*, 230 Pa.Super. 194, 197, 198, 326 A.2d 538, 540 (1974). *Accord Commonwealth v. Schork*, 230 Pa.Super. 411, 326 A.2d 878 (1974), *aff'd on other grounds*, 467 Pa. 248, 356 A.2d 355 (1976); *Commonwealth v. Turman*, 230 Pa.Super. 356, 326 A.2d 891 (1974).

Since *Ingram* did create a new rule of procedure, although not one of constitutional prescription, it follows that that rule should have no effect on guilty pleas which were accepted before January 24, 1974, the date of the decision in *Ingram* and the contrary holding of *Minor* is error.

The overwhelming majority of all convictions result from guilty pleas. *Commonwealth v. Godfrey*, 434 Pa. 532, 536, 254 A.2d 923, 925 (1969). Consequently, allowing guilty pleas like the one here in question to be withdrawn on purely technical grounds would indeed have a negative effect on our system of criminal justice. The guilty plea in this case was valid in both form and substance when it was accepted in 1971: to allow the withdrawal of such a plea would plainly elevate form over substance. To allow the withdrawal of such a plea would permit a criminal defendant to flaunt, in the face of the trial court, that court's failure to comply with rules of procedure that were not then in existence, and it would leave the trial court to question its efforts in the administration of justice, in the face of sweeping decisions which undermine its plea proceedings because of its inability to predict changes in the law years before they occur. In view of these considerations and our conclusion that the holding of *Minor* is erroneous, we would overrule *Minor* and reinstate appellee's guilty plea.

Since the two remaining issues in appellee's petition to withdraw his guilty plea are so blatantly meritless, we will, in the interest of judicial economy, dispose of them herein, rather than remanding the case to the lower court for further proceedings, and possibly creating the need for further appellate review.

Appellee additionally alleged in his petition that the judge's failure to inform him of the elements of the crime to which he pleaded guilty violated his right to due process under the fourteenth amendment. In *Henderson v. Morgan*, 426 U.S. 637, 647 & n.18, 96 S.Ct. 2253, 2258 & n.18, 49 L.Ed.2d 108 (1976), the Supreme Court of the United States

held that due process requires that the defendant receive adequate notice of the critical elements of the offense to which he is pleading guilty. That Court did not hold, however, that notice of the critical elements of the crime had to appear on the record, stating:

> even without such an express representation [by defense counsel, on the record, that the nature of the offense has been explained to the accused], it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.

*Id.* at 647, 96 S.Ct. at 2258.

In *Henderson*, this presumption was overcome because the trial judge found as a fact that, although the appellant had been represented by counsel when he pleaded guilty to murder of the second degree, the element of intent had never been explained to him. In this case, however, it is "appropriate" to presume that appellee's counsel explained to him the nature of the offense charged in sufficient detail to give him notice of the critical elements of that offense. Appellee has never alleged that his attorney was ineffective in representing him or, more specifically, that his attorney failed to discuss with him the nature of the crimes charged. In view of appellee's *admitted* satisfaction with his counsel, we hold that appellee is presumed to have received notice of the crimes charged in compliance with the mandates of due process. As stated before, this allegation is meritless.

Finally, in his petition appellee alleged that because he had an inexact recollection of the evening of the killing, the court "erred in failing *sua sponte* to order a hearing on the issue of whether [he] was on October 4, 5 & 6, 1971 competent to stand trial at all, much less to plead guilty . . . ."

The fact that a defendant has an "inexact recollection" of the events surrounding the crime with which he is charged has no bearing on his competence to plead guilty, and it certainly imposes no duty upon the judge accepting the plea

to question the defendant's competence *sua sponte.* Rather, competence to plead guilty depends upon whether the defendant has "the ability to comprehend his position as one accused of [murder] and to cooperate with his counsel in making a rational defense" and whether he has "sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding, and [has] a rational as well as factual understanding of the proceedings against him." *Commonwealth v. Turner,* 456 Pa. 309, 310, 320 A.2d 113, 114 (1974) (citations omitted). Again, this position is meritless.

The order of the Court of Common Pleas of Allegheny County granting appellee's petition to withdraw his guilty plea is reversed and the petition is dismissed.

ROBERTS, J., files an Opinion concurring in the judgment in which O'BRIEN, C. J., and NIX, J., join.

## OPINION CONCURRING IN THE JUDGMENT

ROBERTS, Judge.

The trial court was correct in its substantive determination that appellee's guilty plea colloquy violated the requirements of *Commonwealth v. Minor,* 467 Pa. 230, 356 A.2d 346 (1976). However, the trial court must be reversed because the court committed procedural error in failing to dismiss appellee's challenge to his guilty plea colloquy as untimely.

*Commonwealth v. Minor Remains Controlling Law*

The opinion of Mr. Justice Larsen, which commands the votes of only three of six justices, does not reflect the view of a majority of the Court. Where, as here, the Court is equally divided on whether a previous holding should be overruled, that holding retains its full force and effect as existing law. Thus, the holdings of *Commonwealth v. Minor* and cases applying *Minor* are undisturbed and remain controlling law. See *Neil v. Biggers,* 409 U.S. 188, 192, 93 S.Ct.

375, 378–79, 34 L.Ed.2d 401 (1972) (equally divided court not entitled to precedential weight); *Ohio ex rel. Eaton v. Price*, 364 U.S. 263, 264, 80 S.Ct. 1463, 1464, 4 L.Ed.2d 1708 (1960) (same); *Commonwealth v. Holly*, 483 Pa. 371, 375, 396 A.2d 1215, 1217 (1979) (judgment of equally divided Court not final for purposes of Post-Conviction Hearing Act); *Commonwealth v. Rightnour*, 469 Pa. 107, 110, 364 A.2d 927, 928 (1976) (subject matter in dispute undisturbed where "no majority can be mustered to do otherwise").

### *Appellee's Challenge To His Guilty Plea Is Untimely*

On this record, which clearly evidences that appellee's challenge to his guilty plea is untimely, there is no reason for the opinion of Mr. Justice Larsen to discuss, let alone attempt to overrule, this Court's holding in *Commonwealth v. Minor*, supra, and the several other cases which have applied Rule 319(a) to guilty pleas pre-dating *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974). See *Commonwealth v. Mack*, 466 Pa. 12, 351 A.2d 278 (1976); *Commonwealth v. Dilbeck*, 466 Pa. 543, 353 A.2d 824 (1976); *Commonwealth v. Schork*, 467 Pa. 248, 356 A.2d 355 (1976); *Commonwealth v. Hunter*, 468 Pa. 7, 350 A.2d 785 (1976); *Commonwealth v. Ramos*, 468 Pa. 404, 364 A.2d 257 (1976); *Commonwealth v. Veltre*, 475 Pa. 285, 380 A.2d 356 (1977); *Commonwealth v. Zakrzewski*, 485 Pa. 532, 403 A.2d 516 (1979).

The present petition to withdraw a guilty plea entered in 1971 in no respect alleges either that appellee was unaware of his appellate rights or that counsel was ineffective for failing to pursue appellee's desire to challenge the plea. Thus, the petition, filed six years after plea and sentence, is untimely and should have been dismissed by the trial court. See *Commonwealth v. Miller*, —— Pa. —— (J. 306 of 1980, filed February 4, 1981).

O'BRIEN, C. J., and NIX, J., join in this opinion.