Commonwealth *v.* LaCourt, Appellant.

Submitted November 16, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Barbara Bailey* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*Bonnie Brigance Leadbetter* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, June 28, 1972:

Jose LaCourt, the appellant, was tried in 1963 before a judge and a jury on indictments charging murder and involuntary manslaughter in connection with the death by stabbing of one Harvey Harvin. No two accounts of Harvin's death coincided, but from the record, the following appears with some degree of certainty.

On Sunday afternoon, March 18, 1962, the deceased and his friend Ben Thomas went to Evelyn's Hoagie Shop in Philadelphia. A dispute soon developed between Harvin and another boy over the use of a pinball machine. Appellant, as manager of the store and desiring to avoid trouble, asked Harvin to leave. The deceased, apparently intoxicated to some extent, then became rowdy and directed abusive language towards those on the premises. He was escorted out of the shop and across the street by one of the patrons, described in the record as a "giant". At this point, the various versions of the day's events diverged sharply. Some witnesses testified that the deceased returned at least one more time, shouting obscenities at appellant and other Puerto Ricans who were in the store. Appellant testified that Ben Thomas brandished a knife when the Puerto Ricans began laughing at the facility with which the "giant" was able to subdue Thomas' friend Harvin. At least three Puerto Ricans than chased Thomas out

into the street. Thomas testified, corroborated by Nathan Greenspan, owner of the hoagie shop, that appellant grabbed a butcher knife, leaped over the counter, and joined in pursuit. Thomas received a superficial stab wound in the back, and the deceased, apparently while running to Thomas' rescue, was fatally stabbed in the abdomen. Some evidence indicated that others beside appellant had knives, though several observers testified that appellant was seen in the street holding a bloody knife and then returning to the shop where he wiped the knife and placed it back on a shelf.

Following the conclusion of the Commonwealth's case and the testimony of three witnesses for the defense, including that of the defendant himself, appellant changed his plea to guilty to murder generally. The jury was dismissed and there followed a brief discussion between the court and counsel, in the course of which the District Attorney certified that the degree of guilt rose no higher than second degree. The defendant stated that he understood what he was doing in pleading guilty, and that he could be sentenced to 20 years in prison. The court then accepted the plea. At the same time, based upon the testimony already heard, the judge made an adjudication of murder in the second degree and imposed a sentence of 2½ to 20 years. No appeal was taken, but in April, 1971, pursuant to a Post Conviction Hearing Act[1] petition, a claim of denial of *Douglas*[2] rights was upheld and appellant was allowed an appeal *nunc pro tunc* from the judgment of sentence.[3] The present appeal followed. The record in-

---

[1] Act of January 25, 1966, P. L. (1965) 1580, §§1 et seq.; 19 P.S. §§1180-1 et seq.

[2] *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963).

[3] A previous PCHA petition had been filed in 1969 and denied by Judge BARBIERI in January, 1970. No appeal was taken from the order denying relief.

dicates that appellant has been represented by counsel at all relevant times.

It is well settled that where a defendant has pleaded guilty to murder generally, has offered no evidence in mitigation in an attempt to reduce the crime to voluntary manslaughter, and has been convicted of second degree murder, the only issues cognizable on appeal are the voluntariness of the plea and the lawfulness of the sentence. *Commonwealth v. Robinson*, 442 Pa. 512, 276 A. 2d 537 (1971); *Commonwealth v. Ward*, 442 Pa. 351, 275 A. 2d 92 (1971); *Commonwealth v. Walters*, 431 Pa. 74, 244 A. 2d 757 (1968). Appellant makes no challenge to the sentence; his sole contention is that an in-custody confession, made on Sunday evening following the fracas, was involuntary even under pre-*Miranda*[4] standards and that its introduction at trial and consequently its use to determine the degree of guilt was a violation of due process. No claim is made, however, that the guilty plea was induced by the confession, or was otherwise invalid. *Commonwealth v. Marsh*, 440 Pa. 590, 271 A. 2d 481 (1970).

The record is clear, and appellant does not argue to the contrary, that defendant *did not seek* to introduce any mitigating evidence that might reduce his offense to voluntary manslaughter. In agreeing that the trial court should determine the degree of guilt based on *all* the evidence introduced prior to the entry of the guilty plea, defendant clearly waived his earlier trial objection to the admissibility of the confession. Any present claim by defendant that the trial court improperly considered the confession in determining the degree of guilt cannot survive defendant's subsequent agreement that all the earlier evidence be considered by the court. This agreement made with counsel was in legal effect a

_____

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

deliberate withdrawal of his earlier objection. Thus it is clear that defendant's second degree murder conviction was amply supported by his guilty plea and the evidence in the record. See the ABA Project on Minimum Standards for Crimial Justice, Standards Relating to Pleas of Guilty, §1.6 (Approved Draft, 1968) which states: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as may satisfy it that there is a factual basis for the plea." The record here indeed provides a solid "factual basis for the plea."[5]

Judgment of sentence affirmed.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the consideration or decision of this case.

---

[5] There is no support in the record for defendant's contention that his confession was involuntary. Defendant concedes that the police practiced no physical or psychological coercion upon him, and argues only that at the time of his arrest he was under the mistaken impression that his mother and employer had also been arrested. Such an unsupported allegation of a purely subjective impression does not serve to render involuntary an otherwise voluntary confession.