## Commonwealth *v.* Campbell, Appellant.

Argued November 27, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Leonard Sosnov,* Assistant Defender, with him *Jonathan Miller,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*James Shellenberger,* Assistant District Attorney, with him *James T. Ranney* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, May 4, 1973:

On February 8, 1972, appellant entered pleas of not guilty to four separate indictments charging murder, voluntary manslaughter, involuntary manslaughter and unlawfully carrying a firearm without a license. All charges arose out of the shooting of one Wesley Nichols in the early morning hours of December 24, 1970. A jury trial was waived. Two days after the commencement of trial before a judge, and while presentation of the Commonwealth's case was still in progress, appellant notified the court that he wished to change his plea to guilty of voluntary manslaughter. An on-the-record colloquy ensued, at the conclusion of which the plea was accepted. In due course appellant was sen-

tenced to 18 months to 10 years imprisonment.[1] This direct appeal from the judgment of sentence was then brought.

Appellant's sole contention is that his plea of guilty to voluntary manslaughter was not knowing and intelligent, because it was made without an awareness of the nature of that offense. He bottoms this argument on Pa. R. Crim. P. 319(a) which provides in pertinent part: "The judge . . . shall not accept [a guilty plea] unless he determines after inquiry of the defendant that the plea is voluntarily and understandably made. Such inquiry shall appear on the record." In *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 106, 237 A. 2d 196 (1968), we stated, as a matter of advice to trial courts, that the examination of a defendant before acceptance of a plea should include, *inter alia*, "an attempt to satisfy itself that the defendant *understands the nature of the charges*, his right to a jury trial, the acts sufficient to constitute the offense for which he is charged and the permissible range of sentence." (Emphasis added).

Appellant contends initially that the trial judge gave him a faulty explanation of voluntary manslaughter and that this misled him into believing that his plea admitted only that he had shot and killed Nichols, and that he would not be precluded from showing that this had been done in self-defense. The court in its recitation to the defendant of the charges against him, during the colloquy after the plea had been tendered, defined voluntary manslaughter as "the intentional killing of another human being *with malice*, with legal provocation, where there exists passion, *to the extent that you cannot form what we call the sufficient mens rea to be held accountable.*" (Emphasis added). The accepted

---

[1] The three indictments for other offenses were dismissed.

definition, of course, is that "voluntary manslaughter consists of an intentional and unlawful killing of a human being without malice, either express or implied, but committed under the influence of sudden passion. Commonwealth v. Flax, 331 Pa. 145, 200 A. 632 (1938)." *Commonwealth v. Connor,* 445 Pa. 36, 38, 282 A. 2d 23 (1971). While the trial judge's statement was technically incorrect, we have little hesitancy in concluding that the defendant was not misled. The legal conception of malice is not easy for a layman to grasp, and the distinction between those homicides in which malice is a requisite element and those in which it is not is sometimes hard to express. The crucial elements of the offense of voluntary manslaughter, namely, that it is an intentional killing which is perpetrated while under the influence of overriding passion, were sufficiently conveyed to appellant.

A reading of the entire colloquy also satisfies us that appellant was not misled by the court's statement that voluntary manslaughter does not involve "sufficient mens rea to be held accountable". The term "mens rea" was not explained to the defendant. The court did, however, emphasize that defendant was pleading guilty to an *unlawful* killing, and that it was a crime more serious than involuntary manslaughter, which was correctly defined. The range of sentences for the two types of manslaughter were also correctly stated.[2]

Finally, the claim that the trial court erred by accepting appellant's plea without investigating his version of the facts must be rejected. We have recently

---

[2] The plea was entered on the understanding that the Commonwealth would recommend a sentence of four to twelve years imprisonment. This bargain was confirmed by both counsel in open court and concurred in by the appellant. The actual sentence was less than the recommendation. No attack has been made on the plea bargain.

held that "before accepting a plea of guilty, the trial court must satisfy itself that there is a factual basis for the plea." *Commonwealth v. Maddox,* 450 Pa. 406, 409-10, 300 A. 2d 503 (1973).[3]

As stated at the outset, the Commonwealth had been presenting its case for almost two days before the guilty plea was tendered. The evidence adduced prior to the plea showed that at approximately 4:00 A.M. on December 24, 1970, Wesley Nichols, in his bed clothes, and appellant, fully dressed, were grappling on the porch of Nichols' home on Chancellor Street in Philadelphia. Two shots were fired from a pistol, one fracturing appellant's leg in three places, the other inflicting the wound which ultimately proved fatal. The victim died on March 6, 1971, following four unsuccessful operations. While there were no eyewitnesses to the shooting, the deceased was able to get to a neighbor's house and summon help. To the neighbor and again upon reaching the hospital a short time later, Nichols declared that it was appellant who had shot him, and that this had occurred while appellant was attempting to commit a robbery. These statements were admitted at trial as res gestae and dying declaration exceptions to the hearsay rule. They unquestionably provided ample factual basis for the guilty plea. Appellant, of course, was present when this evidence was introduced; his decision to plead guilty to voluntary manslaughter was no doubt influenced by the realization that continuation of the trial and a rejection of his purported

---

[3] The writer of this opinion, joined by Mr. Chief Justice JONES, was of the opinion that the factual basis requirement had not theretofore been established as a rule of law in Pennsylvania, and that its adoption should be by a rule which would be prospective in operation. The court held in *Maddox* that the colloquy was adequate to establish a factual basis for the plea. Our holding here is the same.

self-defense claim could easily result in a murder conviction.

Judgment of sentence affirmed.

Mr. Justice NIX concurs in the result.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree that *Commonwealth v. Maddox*, 450 Pa. 406, 300 A. 2d 503 (1973), mandates the majority's result. Accord, *Commonwealth v. Jackson*, 450 Pa. 417, 299 A. 2d 209 (1973).

However, I must reject the notion that *Maddox*, supra, established for the first time the requirement that before accepting a guilty plea, the trial court must first satisfy itself that a factual basis for the plea exists. In *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 106, 237 A. 2d 196, 198 (1968), this Court said: ". . . the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, *the acts sufficient to constitute the offenses for which he is charged* and the permissible range of sentences." (Emphasis added) (Footnotes omitted). (The United States Supreme Court cited this language with approval in *Boykin v. United States*, 395 U.S. 238, 244 n.7, 89 S. Ct. 1709, 1713 n.7 (1969)).

In 1968, this Court promulgated an amendment to Rule 319 of the Pennsylvania Rules of Criminal Procedure which codified the procedure set forth in *Commonwealth ex rel. West v. Rundle*, supra. The Comment to Rule 319 specifically stated:

"It is difficult to formulate a checklist of questions which the judge should ask in making his determination as to whether he will accept the guilty plea. It is recommended that he at least ask questions to elicit the following information:

"(1) Does the defendant understand the nature of the charges to which he is pleading guilty?

(2) *What acts defendant performed and whether these acts constitute the crime charged?*" (Emphasis added.).*

. . . .

Thus, since at least February 3, 1969—the effective date of amended Rule 319—it has been the rule of law in this Commonwealth that the trial court must determine whether there is a factual basis for the guilty plea before accepting the plea.

Indeed, this Court adhered to the factual basis requirement in *Commonwealth v. LaCourt,* 448 Pa. 86, 292 A. 2d 377 (1972)—decided over seven months prior to this Court's decision in *Maddox.* There, we unanimously stated: "Thus it is clear that defendant's second degree murder conviction was amply supported by his guilty plea and the evidence in the record. See the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, §1.6 (Approved Draft, 1968) which states: *'Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as may satisfy it that there is a factual basis for the plea.'* The record here indeed provides a solid 'factual basis for the plea.'" Id. at 90, 292 A. 2d at 379-80 (emphasis added).

Mr. Justice MANDERINO joins in this concurring opinion.

---

* Recently, without amendment to the pertinent part of Rule 319, the Comment was revised to replace question (2) with the following: "Is there a factual basis for the plea?" This revision, a stylistic change, merely emphasized a requirement that has existed in this Commonwealth since, at least, February 3, 1969—the effective date of amended Rule 319.