364 A.2d 927

**COMMONWEALTH of Pennsylvania**

v.

**Leon Ernest RIGHTNOUR, Appellant.**

Supreme Court of Pennsylvania.

Argued June 25, 1975.

Decided Oct. 8, 1976.

108

Carl G. Wass, Harrisburg, for appellant.

Edwin W. Frese, Jr., Deputy Dist. Atty., Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

PER CURIAM.

The appellant's prior direct appeal to this Court resulted in an affirmance of the judgment of sentence by an equally divided court. *Commonwealth v. Rightnour*, 435 Pa. 104, 253 A.2d 644 (1969). Appellant later sought post-conviction relief, but his petition was dismissed on

the ground that the issues sought to be raised had been "finally litigated" within the meaning of § 1180–4 of the Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, § 4, 19 P.S. 1180–4. This appeal followed.

■■ We are of the opinion that the former appeal did not constitute "final litigation" under the Post Conviction Hearing Act, *supra*. That Act defines an issue as "finally litigated" if "[t]he Supreme Court of the Commonwealth of Pennsylvania has ruled on the merits of the issue." 19 P.S. 1180–4(a)(3). An even division of this Court results in affirmance of the order, judgment or decree appealed from because there is not a majority of the Court who favor reversing or modifying the action of the lower court. Thus the " 'subject matter with which [the Supreme Court] is dealing must remain in statu quo'." *Creamer v. Twelve Common Pleas Judges*, 443 Pa. 484, 281 A.2d 57, 58 (1971), quoting *First Congressional District Election*, 295 Pa. 1, 144 A. 735, 739 (1928). To leave a matter undisturbed or "in statu quo" because no majority can be mustered to do otherwise is not the same as ruling on the merits of the matter. The Supreme Court of the United States has ruled similarly with regard to the availability of federal habeas corpus following that Court's affirmance, by an equal division, of a state court's decision upholding the conviction of a defendant. See *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). While not controlling on us in the case at bar, the reasoning of the Court lends strong support to our present conclusion.

■■ While we thus disagree with the reason which the trial court gave for dismissing the petition seeking collateral relief, we must nevertheless affirm its order. The Post Conviction Hearing Act is designed to give a defendant convicted of crime a final opportunity to vindicate his constitutional right to due process of law in

his conviction and sentence to the extent the questions raised have not been previously adjudicated or waived; it was not intended as an avenue to review ordinary rulings made during the conduct of the trial. See 19 P.S. § 1180–3(c)(12). The principal issue which appellant raised in his post-conviction petition and the sole issue presented on this appeal involves a ruling on evidence; it is not of constitutional dimension, and was not cognizable under the P.C.H.A. *Commonwealth v. Schmidt*, 452 Pa. 185, 299 A.2d 254 (1973); *Commonwealth v. Gwyn*, 449 Pa. 131, 295 A.2d 73 (1972); *Commonwealth v. Smulek*, 446 Pa. 277, 284 A.2d 763 (1971); *Commonwealth v. Lowery*, 438 Pa. 89, 263 A.2d 332 (1970); *Commonwealth v. Musser*, 437 Pa. 131, 262 A.2d 678 (1970).

Order affirmed.

JONES, C. J., filed a concurring opinion.

ROBERTS, J., filed a dissenting opinion in which NIX and MANDERINO, JJ., join.

JONES, Chief Justice (concurring).

I concur in the per curiam order entered today, however, I rest my concurrence on the grounds that the issue presented has in fact been "finally litigated." *See,* Sections 3 and 4 of the Post Conviction Hearing Act, Act of 1966, January 25, P.L. (1965) 1580, 19 P.S. 1180–3, 4.

I agree with the majority's interpretation that under the Post Conviction Hearing Act, a matter will not be deemed to be "finally litigated" where the vote on an issue qualifying one for relief under subsection 3(c)(12) of the Act was equally divided on direct appeal. However, it is my belief that the issue raised by appellant Rightnour does not, in the first instance, qualify under the aforementioned subsection.

The holding in *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972), very narrowly stated that ex-

pert psychiatric testimony is relevant and admissible on the issue of whether a defendant prosecuted for murder acted in the "heat of passion." 448 Pa. at 384, 292 A.2d at 289. The *McCusker* decision in no way ruled on the availability of a defense to murder such as that advanced by appellant Rightnour; that is, the defense of a "diminished capacity." *McCusker* in my view being inapplicable, there are no retroactive changes in the *applicable law* such that post-conviction relief under subsection 3(c)(12) of the Act could be invoked.

ROBERTS, Justice (dissenting).

I dissent. Because appellant asserts a valid claim for relief which is cognizable under the Post Conviction Hearing Act (PCHA),[1] the order dismissing appellant's petition without a hearing should be reversed and a new trial granted.

Appellant was tried in October 1966 and found guilty of murder of the first degree. The judgment of sentence was appealed to this Court and affirmed by an equally divided Court. *Commonwealth v. Rightnour*, 534 Pa. 104, 253 A.2d 644 (1969).[2] In November 1969 appellant petitioned for post-conviction relief. The PCHA court dismissed without a hearing believing that the issues had been finally litigated. Appellant appealed that order to this Court.

The sole issue raised by appellant, which was also raised in his first appeal, is whether the trial court committed prejudicial error by refusing to admit certain psychiatric evidence. Appellant sought to establish that, because he suffered from mental disease at the time of

1. Act of January 25, 1966, P.L. (1965) 1580, §§ 1 et seq., 19 P.S. §§ 1180–1 et seq. (Supp.1975).

2. Mr. Chief Justice Bell filed an opinion in support of affirmance, in which Mr. Justice Eagen and Mr. Justice O'Brien joined. Mr. Justice Roberts filed an opinion in support of reversal in which Mr. Justice (now Chief Justice) Jones joined. Mr. Justice Cohen voted for reversal.

the killing, he was unable to form the specific intent required for first degree murder. In *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972), we held that it was reversible error for the trial court to refuse to admit psychiatric testimony offered to show that a defendant, who was accused of murder, acted in the heat of passion. See *Commonwealth v. Demmitt*, 456 Pa. 475, 481–82, 321 A.2d 627, 631 (1974); *Commonwealth v. Hamilton*, 459 Pa. 304, 308, 329 A.2d 212, 214 (1974), cert. denied, 420 U.S. 981, 95 S.Ct. 1411, 43 L.Ed.2d 663 (1975).

The prejudicial nature of the trial court's error is compounded in light of our decisions in *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974), and *Commonwealth v. Demmitt*, supra. There we held that no burden of proof requirement may be placed upon a defendant to establish affirmative defenses. The Commonwealth has the "unshifting burden to prove beyond a reasonable doubt all elements of the crime." *Commonwealth v. Rose*, supra at 389, 321 A.2d at 884. Thus, in this case, if appellant had in fact presented the proffered evidence, the Commonwealth would have had to establish beyond a reasonable doubt that appellant, despite his mental disease, did have the specific intent to kill required for first degree murder. The refusal to admit this evidence was prejudicial error and entitles appellant to a new trial. The majority denies him this relief by refusing to consider the merits of his claim.

The majority correctly holds that an affirmance of a conviction by an equally divided Court does not constitute "final litigation" under the PCHA because there is no ruling on the merits of the issues raised. See *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1975); *Durant v. Essex Co.*, 74 U.S. 107, 7 Wall. 107, 19 L.Ed. 154 (1869); *Etting v. Bank of United States*, 24 U.S. 59, 11 Wheat. 59, 6 L.Ed. 419 (1826). However, it holds that the issue here is not cognizable in a PCHA

hearing because it is not "constitutionally based." The majority's holding denies appellant relief just as effectively as if it were to conclude that an affirmance by an equally divided court is a denial on the merits of the claim. The majority's result violates appellant's right to an effective appeal, is neither required by the PCHA itself nor compelled by our decisions, and denies appellant the relief to which he is entitled.

Although appellant may not have a federal constitutional right to appellate review, once that right is conferred by a state, equal protection requires that the review be available to defendants in a non-discriminatory manner. *Mayer v. City of Chicago*, 404 U.S. 189, 92 S. Ct. 410, 30 L.Ed.2d 372 (1971); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Commonwealth v. DeSimone*, 447 Pa. 380, 290 A.2d 93 (1972); *Commonwealth v. Anderson*, 441 Pa. 483, 272 A.2d 877 (1971). As the Supreme Court of the United States stated in *Rinaldi*:

> "This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts."

384 U.S. at 310–11, 86 S.Ct. at 1500–01; see *Mayer v. City of Chicago*, supra 404 U.S. at 193, 92 S.Ct. at 414; *North Carolina v. Pearce*, supra 395 U.S. at 724, 89 S.Ct. at 2080. Thus, in *DeSimone*, this Court held that the failure to provide transcripts to a defendant denied him his right to the " 'proper consideration of his claims' " and " 'adequate and effective appellate review.' " 447 Pa. at 384, 290 A.2d at 96, quoting *Mayer v. City of Chicago*, supra 404 U.S. at 194, 92 S.Ct. at 414. The majority's holding here inflicts these same vices. Appellant,

unlike all other criminal defendants, has been denied adequate and effective appellate review because no appellate court has reached the merits of his properly preserved claim.

Moreover, the PCHA clearly provides review of claims such as that raised by appellant. A claim is cognizable under the act if the petitioner's conviction or sentence results from:

"The abridgement . . . of any right guaranteed by the constitution or laws of the State or the constitution or laws of the United States . . . ."

Act of January 25, 1966, P.L. (1965) 1580 § 3(c)(12), 19 P.S. § 1180–3(c)(12) (Supp.1975). Thus, the act is not, as the majority claims, limited to constitutional claims. See, e. g., *Commonwealth v. Ulbrick*, 462 Pa. 257, 341 A.2d 68 (1975); *Commonwealth v. Nardi*, 430 Pa. 88, 242 A.2d 248 (1968). Here, the refusal to allow the psychiatric testimony was in violation of the laws of the Commonwealth. See *Commonwealth v. McCusker*, supra. Under the plain language of the act, appellant's right to have his claim determined on the merits is not barred merely because it is a non-constitutional challenge of prejudicial error.

The Supreme Court of the United States, in *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), considered an identical problem arising under 28 U.S.C.A. § 2255 (1971). The Court held that the statute authorized habeas corpus relief when a federal prisoner is in custody in violation of either the laws or the Constitution of the United States. The Court concluded:

"This is not to say, however, that every asserted error of law can be raised on a § 2255 motion. In *Hill v. United States*, 368 U.S. 424, 429, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962), for example, we held that 'collateral relief is not available when all that is shown is a

failure to comply with the formal requirements' of a rule of criminal procedure in the absence of any indication that the defendant was prejudiced by the asserted technical error. We suggested that the appropriate inquiry was whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether '[i]t

. . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.' Id., at 428, 82 S.Ct., at 471 (internal quotation marks omitted). The Court did not suggest that any line could be drawn on the basis of whether the claim had its source in the Constitution or in 'the laws of the United States.' "

417 U.S. at 347, 94 S.Ct. at 2305.

This Court, in *Commonwealth v. Gwyn*, 449 Pa. 131, 295 A.2d 73 (1972), suggested a similar test. There, appellant asserted evidentiary errors at trial. He was denied PCHA relief not because his claim was rooted in a non-constitutional claim but rather because he failed to show any prejudice of "constitutional dimensions." We implicitly held that appellant would be granted PCHA relief if he makes a showing of sufficient prejudicial error, even if based on a non-constitutional claim. To do otherwise would be a miscarriage of justice because appellant would be denied a fair trial and denied equal protection of the laws.[3]

---

**3.** Indeed, it could be argued that appellant has met the majority's requirement of a constitutional claim based on a denial of due process or a denial of his right to compulsory process for obtaining witnesses in his behalf. Thus, the majority's distinction between constitutional and non-constitutional claims is difficult if not impossible to apply. As the ABA Commission on Standards of Judicial Administration, Standards Relating to Appellate Courts § 3.10, commentary at 17 (Tentative Draft, 1976), states: "Criteria [for determining a right to appeal] such as [whether the claim involves a constitutional issue] have proved unsatisfactory. A 'constitutional' question can be conjured up in almost any case, for example, by a general contention that the proceeding below was a denial of due process."

The Legislature and our fellow citizens will be shocked to learn that when a statute reads "constitution and laws" the majority of this Court construes these words to mean only "constitution." This reading makes no more sense than if the majority said "day and night" means only "day" or "A and B" means only "A." Put simply, the majority arbitrarily chooses to erase two words used by the Legislature. This defies clear and simple statutory language and creates an absurd result.[4]

Here, appellant was denied the opportunity to present evidence crucial to his defense. He should have been allowed to do so, and the trial court's ruling to the contrary caused serious prejudice. This showing of prejudice is sufficient to meet the tests suggested in *Gwyn* and *Davis*. There is no sound jurisprudential reason for the majority's position, which denies appellant both his right to an appellate decision on the merits of his claim and the relief to which he is entitled. I cannot join in such an unjust result.

NIX and MANDERINO, JJ., join in this dissenting opinion.

---

4. The majority, in its interpretation of this section, also defies the Statutory Construction Act of 1972. The Legislature there provides:

"Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage . . . ."

1 Pa.C.S.A. § 1903 (Supp.1976).

"Every statute shall be construed, if possible, to give effect to all its provisions."

1 Pa.C.S.A. § 1921(a) (Supp.1976).

"When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

1 Pa.C.S.A. § 1921(b) (Supp.1976).

"In ascertaining the intentions of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

(1) That the General Assembly does not intend a result that is absurd. . . .

(2) That the General Assembly intends the entire statute to be effective and certain.

1 Pa.C.S.A. § 1922 (Supp.1976).