448 A.2d 74

COMMONWEALTH of Pennsylvania

v.

James Michael THOMPSON, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 28, 1981.

Filed July 16, 1982.

S. James Buches, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, HESTER and WATKINS, JJ.

HESTER, Judge:

On December 2, 1972, the appellant, James Michael Thompson, and a companion entered the residence of Milford Thompson in the City of Pittsburgh with the intent of finding the resident-victim and stealing his social security money. Upon discovering that the victim had no cash, the appellant and his companion proceeded to beat him unmercifully until death occurred. Both men then fled the scene with four cans of beer taken from the refrigerator.

On July 23, 1973, the appellant entered a guilty plea before Judges Loran Lewis and Benjamin Lenchner in the Court of Common Pleas of Allegheny County. The plea was accepted and convictions for murder in the first degree and attempted robbery were entered. The appellant was sentenced to imprisonment for life on the murder conviction and to a concurrent term of five to ten years on the attempted robbery conviction. No appeal was taken.

The appellant did file, however, a petition under the Post Conviction Hearing Act on June 20, 1978 alleging that he was denied his right to appeal. That petition was denied on December 5, 1978 and no appeal was taken once again. A second petition for relief under the Post Conviction Hearing Act was filed on July 1, 1980. The appellant was granted his right to appeal nunc pro tunc the Order of Court dated December 5, 1978, denying relief at the first post conviction hearing. This appeal followed.

22

The appellant argues that both the trial court and counsel failed to assure that the guilty plea was entered knowingly, intelligently and voluntarily as evidenced by the failure to inform the appellant of the possible range of sentences, of his right to participate in jury selection, of his presumption of innocence and of the nature and elements of the offenses charged. We find no merit to this argument and the accompanying allegations.

We agree that the guilty plea colloquy merely made a reference to the charges of robbery and murder. No attempt was made to define these offenses and inform the appellant of their nature and legal elements.

We are well aware of the holdings set forth in *United States ex rel. McDonald v. Commonwealth of Pennsylvania*, 343 F.2d 447 (1967), *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974) and *Commonwealth v. Minor*, 467 Pa. 230, 356 A.2d 346 (1976). Read conjunctively, these decisions indisputably required, at the time the appellant entered his plea, the conducting of a guilty plea colloquy that assured that the accused was fully cognizant of the nature and *elements* of the offenses charged. The law of these three decisions has no doubt generated concise, yet complete colloquies that safeguard an accused's constitutional rights. We believe, however, that these three decisions are, in certain guilty plea proceedings, unnecessarily restrictive.

■ Certain colloquies, not satisfying the standards of *Pennsylvania, Ingram*, and *Minor*, supra, provide alternative methods of establishing the factual basis of the charges, and; consequently, assure a knowing, intelligent and voluntary plea. It is *more prudent to hold that* colloquies, as here, conducted without reference to the elements of the offense do not, per se, result in involuntary pleas; rather, at most, they shift the burden to the Commonwealth to prove voluntariness through other methods. See *Commonwealth v. Belgrave*, 445 Pa. 311, 285 A.2d 448 (1971). The guilty plea hearing here demonstrated the appellee's accomplishment of that task.

■ A factual basis for the plea is universally required. Several courts have concluded that a factual basis existed even without considering whether a thoroughly conducted colloquy on the elements of the offenses was conducted. *Commonwealth v. Campbell*, 451 Pa. 465, 304 A.2d 121 (1973); *Commonwealth v. Jackson*, 450 Pa. 417, 299 A.2d 209 (1973). These decisions were formulated in spite of the earlier ruling in *Pennsylvania*, supra, and the retroactivity of *Ingram*, supra. The state of the law on guilty plea colloquies in this Commonwealth, then, is steadfast on the requirement of "factual basis", but capricious on the methods employed to provide a factual basis.

Rule 319(a) of the Pennsylvania Rules of Criminal Procedure requires only that a plea be entered "voluntarily and understandingly" in order to achieve validity. The accompanying legislative comments suggest a list of questions for colloquies that will likely generate a voluntary and understandable plea. One recommendation on the list is an inquiry into the factual basis of the plea; however, the legislature does not limit the production of a factual basis to an on-the-record inquiry into the accused's understanding of each element of the offenses charged.

■ The factual basis here was established, and the Commonwealth carried its burden, by proving the commission of murder in the first degree and attempted robbery through a lengthy taped interview conducted by Officers DiShantz and Palomino of the appellant. This taped interview, along with the live testimony of two eye witnesses, was produced in full at the guilty plea hearing.

In the taped interview, the appellant described in detail his unauthorized entry into the victim's home, the attempt to steal cash and the bludgeoning of the victim's body. He admitted to kicking the victim, throwing him to the floor, pouring plaster over his entire body to cover fingerprints and contemplating the use of a saw to sever the victim's head.

Albeit the appellant may have entered the house with the intent only to rob the victim, murder in the first degree was undeniably produced via the felony murder rule. The appellant provided the evidence of guilt himself at the interview. He listened to his own admission a second time at the guilty plea hearing and never objected to the accuracy and authenticity of his description of the unfolding events. Accordingly, the factual basis for the plea of guilt to murder in the first degree and attempted murder was established through a method just as effective and conclusive as a specific court inquiry into the elements of the offense.

■ Upon review of the trial transcripts, we find a specific inquiry by the court into the appellant's understanding of the Commonwealth's obligation to prove him guilty beyond a reasonable doubt. We also find that Judge Lewis interrupted the testimony of Chief Pathologist, Joshua Perper to inform the appellant of the maximum sentences that the court could impose on the robbery and murder convictions entered pursuant to the guilty pleas. Although we agree that the appellant was not informed of his right to participate in the selection of the jury, he has proposed no case law that requires the court to notify an accused of such a right before a guilty plea can be entered knowingly, intelligently and voluntarily. Case law and the trial record support the finding of a validly entered guilty plea. Having found that the guilty plea hearing as a whole insured the entry of a knowing, intelligent and voluntary plea, there is no substance, then, to the appellant's assertion that his trial counsel was ineffective for failing to assist the court in conducting a complete hearing.

■ The appellant also argues that he did not intelligently waive his right to appeal following the imposition of sentence due to the fact that his trial counsel's alleged ineffectiveness at the guilty plea hearing was an extraordinary circumstance that precluded any such waiver. In reiteration, the guilty plea was voluntarily entered pursuant to a properly conducted colloquy. Trial counsel could not object to an errorless colloquy; therefore, he acted effectively. An

unintelligent waiver of appellate rights cannot be attributed here to ineffectiveness of counsel.

Next, appellant argues that his was not an intelligent waiver of appellate rights because the Court merely informed him of his rights to appeal and to court appointed counsel if he was otherwise unable to afford one. The appellant contends that such information was not enough to assure an intelligent waiver because appellant must also be informed of the *extent* of his appellate rights.

■ We are constrained to disagree. The appellant misinterprets the law of *Commonwealth v. Wilson*, 430 Pa. 1, 241 A.2d 760 (1968). The *Wilson* court did not *require* an on-the-record demonstration of the full import of the right of appeal and right to counsel; it merely *suggested* that such practice would be appropriate. The *Wilson* court remanded that case only for a determination of whether the Commonwealth could prove that the appellant was aware of his right to appellate counsel. It had already found that the appellant was aware of his right to appeal. The court concluded:

> If the hearing court finds that the Commonwealth is able to demonstrate that appellant knew of his right of appellate counsel, it shall enter an order denying relief. Id., 430 Pa. 6, at 241 A.2d 763.

The appellant misconstrues the holding of *Commonwealth v. Maloy*, 438 Pa. 261, 264 A.2d 697 (1970), as well. *Maloy*, supra, held only that an appellant's waiver of appellate rights is intelligently entered where he is aware of his right to appeal and his right to have the appeal generated by a free, court-appointed counsel. See *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Appellant, himself, admits being informed of these two rights by the trial court.

Order of Court, dated December 5, 1978, is hereby affirmed. Appellant is denied the right to file a petition to withdraw his guilty plea and to file a direct appeal. A

second hearing on his Petition for Post Conviction Relief of June, 1978 is not granted.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

The majority admits that "the guilty plea colloquy merely made a reference to the charges of robbery and murder. No attempt was made to define these offenses and inform the appellant of their nature and legal elements." At 75. Nevertheless, relying on an "alternative method[ ] of establishing the factual basis of the charges," at 75, the majority affirms appellant's conviction. The majority justifies its decision by characterizing case law to the contrary as "unnecessarily restrictive." *Id.* I am unable to subscribe to this reasoning.

In the majority's view, "Certain colloquies, not satisfying the standards of *Pennsylvania, Ingram,* and *Minor, supra,* provide alternative methods of establishing the factual basis of the charges, and, consequently, assure a knowing, intelligent and voluntary plea." At 75. This statement is a *non sequitur,* which subordinates logic to a desired result. It does not follow—as the majority's "consequently" suggests—that a plea was understandingly and voluntarily tendered merely because there was a factual basis for its entry. Rule 319's mandate that "the plea [must be] understandingly and voluntarily tendered" is designed to insure that the accused understands the constitutional rights he is waiving by entering a plea of guilty. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970) (accused tendering guilty plea "stands as a witness against himself and is shielded by the Fifth Amendment from being compelled to do so . . . [and plea is a] waiver of his right to trial before a jury or a judge."); *Commonwealth v. Ammon,* 275 Pa.Superior Ct. 324, 331 n. 4, 418 A.2d 744, 747 n. 4 (1980) ("guilty plea involves the surrender of a panoply of constitutional rights"); *Commonwealth v. Landi,* 280 Pa.Superior Ct. 134, 141, 421 A.2d 442, 445 (1980) (guilty plea is a waiver of "a number of significant constitutional rights").

To be sure, it *is* important to demonstrate on the record that a factual basis for the plea exists. But that demonstration is only a *part* of the *larger* demonstration that the plea was understandingly and voluntarily tendered. It may never serve, as the majority would have it serve, as a *replacement* for the *rest* of the demonstration.

In addition to depending on a *non sequitur*, the majority opinion ignores precedent. As an intermediate appellate court, "we are not free . . . to overrule the decisional law enunciated by the Supreme Court of Pennsylvania," *Hillbrook Apartments, Inc. v. Nyce Crete Co.*, 237 Pa.Superior Ct. 565, 573, 352 A.2d 148, 152 (1975), and declare cases such as *Ingram* and *Minor* "unnecessarily restrictive," while choosing a course we consider "more prudent." At 75. Besides, the case on which the majority relies to chart its "more prudent" course, *Commonwealth v. Belgrave*, 445 Pa. 311, 285 A.2d 448 (1971), is not only pre-*Ingram*, but it supports a proposition contrary to that for which it is cited, for there the court required an "independent, *judicial* conclusion that the accused understands and admits the specific acts constituting the crime[s] charged." *Id.*, 445 Pa. at 317–18, 285 A.2d at 451 (emphasis in original).

If we were to abide by precedent, instead of charting our own course, we should conclude, I suggest, that the order of the lower court ought to be reversed and the case remanded with instructions to grant appellant leave to withdraw his guilty plea. I offer this conclusion quite aware of the unattractiveness of this case; it is, indeed, just the sort of case that invites one to ignore precedent. But the law is not worth much if we follow it only when it leads where we want to go.

–1–

On July 23, 1973, appellant pleaded guilty to murder and robbery, and after a hearing, was sentenced to life imprisonment for murder and five to ten years imprisonment for attempted robbery, the sentences to be served concurrently. N.T. 7/23/73, 72. On June 9, 1978, appellant filed a PCHA petition in which he alleged, *inter alia*, that his "[g]uilty plea

was not knowingly and intel[l]igently made" and that his "counsel was totally ineffective" and "had deliberately let [his] appeal rights expire knowing [he] demanded a direct appeal." On December 5, 1978, after a hearing, the lower court dismissed the petition, without an opinion. No timely appeal from this order was filed.

On March 28, 1980, appellant filed, *pro se*, a "Motion in Application for Leave to Withdraw Guilty Plea" and an "Application for Leave to File and Proceed *in forma pauperis* and for Appointment of Counsel." On June 30, 1980, he filed a second PCHA petition, in which he made substantially the same allegations as he had in his first PCHA petition, and also alleged that although requested to do so, his counsel had failed to take an appeal from the order of December 5, 1978, by which the lower court had denied his first PCHA petition. A hearing was held at which the Commonwealth stipulated that in fact appellant had been denied his right to appeal, and on the basis of this stipulation the lower court, by order of November 17, 1980, granted appellant leave to file an appeal *nunc pro tunc* from the order of December 5, 1978. The appeal now before us was then filed.

In response to the appeal, the lower court, on February 25, 1981, filed an opinion explaining why it had entered its order of December 5, 1978. In its opinion, the lower court said:

A petitioner who fails to attack his guilty plea on direct appeal waives his right to make the allegation in a Post Conviction petition. In *Commonwealth v. LaSane*, [479 Pa. 629] 389 A.2d 48 (1978) and *Commonwealth v. Porter*, [256 Pa.Super. 163] 389 A.2d 651 (1978), the Supreme and Superior Courts of Pennsylvania held that because the validity of a guilty plea is cognizable on direct appeal, the issue is waived and cannot be raised in Post Conviction proceedings unless the petitioner establishes either the existence of extraordinary circumstances justifying the failure to raise the issue or he rebuts the presumption that his failure to appeal was a knowing and intelligent one. In the case at bar, petitioner failed to establish either of these matters which would remove the presumption of waiver.

Slip op. at 2.

This explanation is not acceptable. Appellant's failure to file a direct appeal from the judgments of sentence entered on his guilty plea might in some circumstances have operated as a waiver of his right to challenge his plea, and thus have precluded his later PCHA attack on the plea. But that is not true if the failure to file a direct appeal was due to extraordinary circumstances. In his June 9, 1978, PCHA petition appellant alleged that his failure to file a direct appeal *was* due to extraordinary circumstances. For he alleged that his counsel at the guilty plea proceeding was ineffective, and the ineffectiveness of counsel is an extraordinary circumstance that, if proved, precludes waiver. *Commonwealth v. Allen*, 278 Pa.Superior Ct. 501, 420 A.2d 653 (1980). It is therefore necessary to decide whether appellant is right that his guilty plea counsel was ineffective. The most convenient way to make this decision is to decide whether appellant's guilty plea was voluntarily and intelligently entered, and then, if it was not, decide whether appellant's guilty plea counsel was ineffective for not challenging the colloquy preceding the plea.

–2–

Appellant argues, in essence, that his guilty plea was not voluntarily and intelligently entered because the colloquy preceding it fell short of the requirements set forth in *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974). Since appellant's guilty plea was entered in 1973, before *Ingram*, this argument requires us to consider *Ingram's* retroactivity.

*Ingram's* retroactivity has been the issue in two recent, and conflicting, Supreme Court decisions. In *Commonwealth v. Minor*, 467 Pa. 230, 356 A.2d 346 (1976), the Court held that *Ingram* should be retroactively applied because it did not change the law regarding guilty plea colloquy requirements. The Court said: "In Pennsylvania, even before we decided *Ingram*, it has been the law that an understanding of the elements of the offense charged is necessary to an intelligent, knowing and voluntary guilty plea." *Id.*, 467 Pa. at 233, 356 A.2d at 347.

In *Commonwealth v. Minarik*, 493 Pa. 573, 427 A.2d 623 (1981), the Court again considered the issue of *Ingram's* retroactivity. There, the defendant was told during his guilty plea colloquy, which had taken place in 1971, that:

> he had been charged with murder and voluntary manslaughter; that the purpose of the colloquy was to determine whether he understood the meaning of the charges; that he had been charged with unlawfully and feloniously causing the death of another; that by pleading guilty he was admitting that he was guilty of murder of the second degree; that the Commonwealth had the burden of proving that the murder was wilful, deliberate and premeditated in order to raise the crime to murder of the first degree; and that he had the burden of introducing evidence to lower the degree of the crime to voluntary manslaughter. In response to the judge's questioning, appellee admitted having killed the victim; indicated that he understood everything the judge had told him; stated that he had had adequate opportunity to meet with his counsel and that he was pleased with the representation that counsel provided; and acknowledged that his guilty plea was the product of his own free will. At the conclusion of the colloquy, when the judge asked appellee whether he wished to say anything further, appellee responded simply: "My plea was entered voluntarily by myself. I understand."

*Id.*, 467 Pa. at 575, 427 A.2d at 624.

The lower court granted the defendant's petition to withdraw his guilty plea. The Supreme Court reversed. Three justices—Justices LARSEN, FLAHERTY, and KAUFFMAN—would have held the colloquy sufficient despite the fact that it fell short of the requirements of *Ingram* because the defendant was not informed of the elements of the offense of murder. They said that "although the court did not inform appellee of the specific legal elements of the crime charged, the on-the-record colloquy shows that the plea was made voluntarily, knowingly and intelligently, and with a full understanding of the nature of the charges." *Id.*,

467 Pa. at 577, 427 A.2d at 625. In their view, *Ingram* did establish a new rule of criminal procedure, and *Minor* should be overruled. *Id.*, 467 Pa. at 579, 427 A.2d at 626–27. But this view did not carry the day, for the other three Justices—Chief Justice O'BRIEN, Justice ROBERTS, and Justice NIX—would have held that the defendant's challenge to his guilty plea was untimely and that the issue of *Ingram's* retroactivity was therefore not before the Court, and "there [was] no reason for the opinion of Mr. Justice LARSEN to discuss, let alone attempt to overrule, this Court's holding in *Commonwealth v. Minor, supra.*" *Id.*, 467 Pa. at 583, 427 A.2d at 628. Further, they said:

> The opinion of Mr. Justice Larsen, which commands the votes of only three of six justices, does not reflect the view of a majority of the Court. Where, as here, the Court is equally divided on whether a previous holding should be overruled, that holding retains its full force and effect as existing law. Thus, the holdings of *Commonwealth v. Minor* and cases applying *Minor* are undisturbed and remain controlling law. See *Neil v. Biggers*, 409 U.S. 188, 192, 93 S.Ct. 375, 378–79, 34 L.Ed.2d 401 (1972) (equally divided court not entitled to precedential weight); *Ohio ex rel. Eaton v. Price*, 364 U.S. 263, 264, 80 S.Ct. 1463, 1464, 4 L.Ed.2d 1708 (1960) (same); *Commonwealth v. Holly*, 483 Pa. 371, 375, 396 A.2d 1215, 1217 (1979) (judgment of equally divided Court not final for purposes of Post-Conviction Hearing Act); *Commonwealth v. Rightnour*, 469 Pa. 107, 110, 364 A.2d 927, 928 (1976) (subject matter in dispute undisturbed where "no majority can be mustered to do otherwise").

*Id.*, 467 Pa. at 582, 427 A.2d at 628.

It may be that in some future case a majority of the Justices will agree that *Minor* should be overruled. But in the meantime we must follow it.

One issue remains, before the validity of appellant's guilty plea may be appraised in the light of *Ingram* and *Minor*: it is necessary to consider whether appellant has waived his right to challenge the plea. As just indicated, in *Minarik*

the Chief Justice, Justice ROBERTS, and Justice NIX would have held that the argument that the plea was invalid was waived. They said:

> The present petition to withdraw a guilty plea entered in 1971 in no respect alleges either that appellee [the defendant] was unaware of his appellate rights or that counsel was ineffective for failing to pursue appellee's desire to challenge the plea. Thus, the petition, filed six years after plea and sentence, is untimely, and should have been dismissed by the trial court. *See Commonwealth v. Miller*, 495 Pa. 177, 433 A.2d 1 (1981).

*Id.*, 467 Pa. at 583, 427 A.2d at 628–29.

Here, however, there was no waiver. For appellant did allege that his plea was not intelligently entered and that his guilty plea counsel was ineffective in failing to file an appeal challenging the validity of the plea.

–3–

The entire colloquy preceding appellant's guilty plea was as follows:

Q. Mr. Thompson, do you understand that you have been charged on two indictments, one robbery, and the other indictment, murder?

A. Yes.

Q. Do you understand what we mean by robbery?

A. Yes, sir.

Q. Of course, you understand what is meant by murder?

A. Yes, sir.

Q. Taking the life of another?

A. Yes, sir.

Q. And you are guilty of these charges, are you?

A. Yes, sir, I am.

Q. And you are pleading guilty of your own free will?

A. Yes, sir.

Q. Have any promises, threats or inducements been made to you to get you to plead guilty?

A. No, sir, have not.

Q. You understand you have a right to a jury trial?

A. Yes, sir.

Q. Do you understand that if you wish a jury trial you would have to be—the evidence would have to be presented by the Commonwealth to prove you guilty beyond a reasonable doubt?

A. Yes, sir.

Q. You understand all of that?

A. Yes, sir.

Q. In view of all of that, it is your wish to plead guilty to these two charges?

A. Yes, sir.

JUDGE LEWIS: All right.

BY MR. VILLAGE:

Q. Mr. Thompson, how old are you, sir?

A. Twenty-eight.

Q. How far did you go in school?

A. Tenth grade.

Q. Do you read and write the English language?

A. Yes, sir.

Q. I discussed the facts of this case with you?

A. Yes.

Q. On numerous occasions at the jail?

A. Correct.

Q. Now, sir, the Judge asked you if any threats or promises were made to you to induce you to sign this guilty plea and you answered the Judge no.

A. Correct.

Q. I did, however, explain to you, did I not, that I had discussed this case with the District Attorney in this particular case, Mr. Geary, and Mr. Geary and I entered into what is called a plea bargain, and that is that in view of the fact that you are pleading guilty to charges generally, Mr. Geary has agreed to recommend to the Judge that any sentences with regard to the robbery

charge be concurrent with the sentence as regards the homicide charge.

A. Yes, sir.

Q. Do you understand this?

A. Yes, sir.

MR. VILLAGE: Is that a correct statement of our agreement?

MR. GEARY: Yes, sir. Mr. Village accurately portrayed our discussions to this point.

JUDGE LEWIS: We will accept the plea bargain.

MR. VILLAGE: Thank you.

N.T. 7/23/73, 3–6.

A physician for the Coroner's office then started to testify, but after a few questions had been put to him, the lower court interrupted, as follows:

JUDGE LEWIS: Just a minute. There is one thing I neglected to ask the defendant, and that was whether or not he understood the sentence that could be given him. We ought to put that in.

(Defendant comes forward with counsel.)

JUDGE LEWIS: I neglected to ask you, Mr. Irwin, or alias Michael Thompson—

MR. VILLAGE: This is James Michael Thompson.

JUDGE LEWIS: I neglected to ask you if you realized the sentence that could be given you here in pleading guilty. I want you to understand that as far as the murder case goes, the maximum sentence to be given you would be life imprisonment. As far as the robbery case goes it would be a maximum sentence of 20 years. So, I want you to understand that before we go ahead with this guilty plea.

Do you understand that?

THE DEFENDANT: Yes, sir.

JUDGE LEWIS: Still you want to plead guilty?

THE WITNESS: Yes, sir.

N.T. 7/23/73, 7–8.

There can be no doubt—and the majority at least implicitly concedes—that under *Ingram* and *Minor* this colloquy was defective. The Court in *Ingram* said that:

> We have often enunciated the principle that an adequate on the record colloquy under Rule 319(a) must include a demonstration "that the defendant understands the nature of the charges. . . ." *Commonwealth v. Campbell*, 451 Pa. 465, 467, 304 A.2d 121, 122 (1973); *Commonwealth v. Maddox*, 450 Pa. 406, 408, 300 A.2d 503, 504 (1973); *see also Commonwealth v. Belgrave*, 445 Pa. 311, 317, 285 A.2d 448, 450 (1971). In order to demonstrate that a defendant possesses such understanding, he certainly must be told more than just that he has been charged with murder or robbery, for example. While such terms clearly connote some meaning to the layman, this meaning does not always embrace the basic legal elements of the crime.

455 Pa. at 203, 316 A.2d at 80.

And in *Minor* the Court said, after collecting cases:

> These cases demonstrate that the defendant's understanding of the nature and elements of the charges against him has long been an essential part of a valid guilty plea in Pennsylvania. In this respect *Ingram* cannot be said to be new law.

467 Pa. at 235, 356 A.2d at 348 (footnote omitted).

Nowhere in the colloquy did the lower court explain to appellant the elements of the crimes of murder or of robbery. Rather, it did precisely what *Ingram* and *Minor* forbid—it merely told appellant that he had been charged with murder and robbery. A plea of guilty of murder cannot stand where the elements of murder, including malice, have not been explained. *Commonwealth v. Brown*, 269 Pa.Superior Ct. 498, 410 A.2d 366 (1979). *See, Commonwealth v. Hare*, 486 Pa. 123, 404 A.2d 388 (1979); *Commonwealth v. Tabb*, 477 Pa. 115, 383 A.2d 849 (1978); *Commonwealth v. Holmes*, 468 Pa. 409, 364 A.2d 259 (1976). Nor can

a plea of guilty of robbery stand where the elements of robbery have not been explained. *Commonwealth v. Allen, supra* (theft); *Commonwealth v. Morris,* 271 Pa.Superior Ct. 362, 413 A.2d 708 (1979) (robbery); *Commonwealth v. Davis,* 267 Pa.Superior Ct. 118, 406 A.2d 547 (1979) (robbery). *See also* Pa.R.Crim.P. 319.

Moreover, the Supreme Court has recently reaffirmed *Ingram's* vitality and its applicability to cases such as this. In *Commonwealth v. Shaffer,* 498 Pa. 342, 446 A.2d 591 (1982), the Court held that *Ingram's* requirement that the elements of the crime charged be explained did not apply where the defendant entered his plea of guilty after the Commonwealth had rested its case in chief. The Court reasoned that the colloquy need not inform the defendant of the elements of the crime charged in such a situation because the trial itself was a graphic explanation of this information. In reaching this conclusion, the Court specifically stated that it "[did] not by today's holding intend to abolish the requirement laid down in *Ingram* that the elements of the crime must be explained on the record to the defendant prior to the acceptance of a guilty plea. . . ." 498 Pa. 342, 446 A.2d 591. The Court also explained that the *Ingram* requirement is especially important where, as here, the defendant does not have "finite knowledge of the evidence available against him." Said the Court:

If the stated purpose for conducting a colloquy is to "demonstrate that defendant's action is taken voluntarily and intelligently," *Commonwealth v. Ingram,* 455 Pa. at 200, 316 A.2d at 78, it must be assumed that some weighing of alternatives, going to trial versus entering a plea, occurs. Why then is it paramount that the elements of a crime be explained, on the record, to the defendant? In the ordinary case, where the defendant tenders a plea of guilty from a bargaining position which is devoid of finite knowledge of the evidence available against him, concern with an explanation of the elements of the crime is of greater significance than in the case where the defendant,

as here, enters the plea after the Commonwealth's case has been presented. Presumably, an explanation of the elements enables the defendant to assess the Commonwealth's ability to prove that which he is admitting in pleading guilty by comparing the elements to the evidence he knows or has reason to believe the Commonwealth has available. Thus, he determines whether the prosecution has the ability to convict should he instead choose to exercise his right to trial.

498 Pa. 342, 446 A.2d 591.

–4–

It is now in order to consider whether appellant's guilty plea counsel was ineffective. Appellant argues that counsel was ineffective because he "not only failed to remedy the inadequacy of the Trial Court's colloquy, but also failed to take a direct appeal or seek to withdraw the guilty plea." Brief for Appellant at 16.

The lower court dealt only with the second of appellant's arguments. It said:

At the hearing on the Post Conviction Hearing Act Petition, petitioner testified that his trial attorney told him that a direct appeal from his plea of guilty would automatically be taken. Trial counsel stated that he had no recollection of so advising the petitioner and, further, that such advice, under the circumstances of the case, would have been unlikely. Petitioner, although he knew that the direct appeal would have to be taken within 30 days, made no attempt to contact his attorney or the Court until 5 years after his plea of guilty, when he filed the instant Post Conviction Hearing Act Petition. Considering all the circumstances of this case as adduced at the Post Conviction Hearing, the Court concluded that the petitioner had no desire to take a direct appeal from his plea of guilty.

Slip op. at 1–2.

38

I am not persuaded by this reasoning. In *Commonwealth v. Allen*, 278 Pa.Superior Ct. 501, 420 A.2d 653 (1980), the Commonwealth argued that counsel should not be found ineffective for failing to appeal a defective guilty plea colloquy because the defendant had not asked him to do so. Rejecting this argument, we said:

> Trial counsel was responsible for protecting appellant's rights at the guilty plea hearing by ensuring that his guilty plea colloquy was complete. Having failed in this duty, counsel was required to inform appellant that the colloquy was fatally defective; that he had the right to petition the lower court to withdraw his pleas; and that if the lower court refused his petition, he had a meritorious claim for appeal.

278 Pa.Superior Ct. at 508, 420 A.2d at 656.

Thus, it is immaterial whether or not appellant "had no desire" to take an appeal. His counsel had a duty to inform him that the colloquy was defective, that he could appeal, and that on appeal, he could challenge the colloquy as defective. Although there was conflicting evidence at the PCHA hearing regarding whether counsel had told appellant that he could appeal or that appeal was "automatic," N.T. 12/5/78, 6–9, there was no evidence that appellant was ever told that his colloquy was defective. On the contrary, his counsel testified that he did not believe there were any grounds for appeal. *Id.* 17. By this testimony, counsel himself demonstrated his ineffectiveness. *See, Commonwealth v. Zakrzewski*, 485 Pa. 532, 403 A.2d 516 (1979) (guilty plea; colloquy did not explain elements of murder; held, counsel ineffective for failing to advise that colloquy was defective and plea therefore invalid); *Commonwealth v. Babel*, 248 Pa.Superior Ct. 496, 375 A.2d 350 (1977) (guilty plea; colloquy did not explain elements of burglary; held, counsel ineffective for failing to take direct appeal.)

We should reverse the lower court's order of December 5, 1978, and remand with instructions to permit appellant to withdraw his guilty plea and proceed to trial.